### JANET G. HOPFER *v.* RICHARD A. HOPFER, JR.
### (AC 19162)

Schaller, Hennessy and Shea, Js.

---

Argued February 24—officially released August 22, 2000

*Lawrence P. Weisman*, for the appellant (plaintiff).

*Susan M. Cormier*, with whom were *Michelle Killion*, certified legal intern and, on the brief, *Edward Nusbaum*, for the appellee (defendant).

*Opinion*

SHEA, J. The plaintiff, Janet G. Hopfer, appeals from the judgment of the trial court dissolving her marriage to the defendant, Richard A. Hopfer, Jr. On appeal, the plaintiff claims that the court improperly (1) found that the defendant's unvested stock options were not marital assets and therefore not subject to distribution, (2) awarded nonmodifiable time limited alimony for a period of eleven years and (3) awarded an inadequate amount of alimony, that is, $72,000 annually for two

years and $48,000 annually for an additional nine years. We affirm the judgment of the trial court.

The court found the following facts. After eighteen years of marriage, the plaintiff brought a dissolution action against the defendant. The defendant then filed a cross complaint[1] and, soon thereafter, the plaintiff withdrew her complaint. The cross complaint sought a dissolution of the marriage on the ground that it had irretrievably broken down, joint custody of the parties' two children,[2] an equitable distribution of the parties' real[3] and personal property, and such other relief, legal or equitable, as the court should deem proper.

On December 18, 1998, the court rendered judgment on the cross complaint, dissolving the marriage on the ground that it had irretrievably broken down[4] and implicitly approving the stipulation of the parties for joint custody of the children, who are to reside with the plaintiff. The judgment provided that the plaintiff shall retain title to the marital residence as her sole property, but shall assume the mortgages and hold the defendant harmless from and indemnified as to them. The contents of the home were awarded to the plaintiff as her sole property. She also was awarded 50 percent of the defendant's 401 (k) plans, valued at $80,087, and 50 percent of his 667 vested stock options from Viacom, which options on December 4, 1998, had a gross value of $19,343 before taxes.

The court found that from 1995 to November, 1998, the defendant was employed by Simon & Schuster, a

---

[1] The case proceeded on the cross complaint.

[2] The parties stipulated that they shall have joint legal custody of their two children, twin boys born on January 14, 1981.

[3] The court found that the value of the equity in the marital residence was $207,609. Prior to commencement of trial, the defendant transferred his undivided one-half interest in the residence to the plaintiff.

[4] The court found that the primary cause of the breakdown in the marriage was the defendant's three extramarital affairs.

subsidiary of Viacom. He worked for Simon & Schuster for three years between 1995 and November, 1998.[5] His salary was $219,000 per year with a bonus of up to 35 percent. In December, 1997, the parent company, Viacom, announced plans to sell Simon & Schuster. The defendant was offered a retention bonus of 50 percent of his base salary to stay with the company for a period beyond the date of sale. The date, however, was postponed several times, and the defendant became concerned about his future employment when the new management took over. In 1997, prior to the proposed sale, he had inquired about employment at Amazon.com, but he received no job offer.

In October, 1998, a year and three months after the plaintiff served her complaint seeking a dissolution of the marriage, the defendant was employed by NetSelect, Inc., located in Westlake Village, California. He was its chief information officer with a base salary of $170,000 and a target bonus of 25 percent. He also received options for 75,000 shares of stock at $6.31 per share, which vest at the rate of 25 percent per year with an initial vesting date of November, 1999.

The court also ordered the defendant to pay to the plaintiff, as nonmodifiable periodic alimony, $6000 per month for twenty-four months and $4000 per month for an additional nine years.[6] The alimony is subject to sooner termination if the plaintiff remarries, either party dies or if ordered by a court.

The court also ordered the defendant to pay $480 per week to the plaintiff as child support for the two children until they both attain nineteen years of age or

---

[5] That job required him to commute from Westport to New Jersey.

[6] The provisions of General Statutes § 46b-86, modification of alimony or support orders and judgments, apply to this order.

sooner graduate from high school.[7] The final paragraph of the judgment ordered the defendant to continue to maintain the existing life insurance policies providing $270,000 coverage for the plaintiff for as long as he is obliged to pay alimony to her and to provide the existing coverage for the children while he is obliged to pay child support.

The judgment did allow the defendant to retain his remaining assets consisting of life insurance having a cash value of $4010, a gold watch valued at $1500, a coin collection valued at $5000, and one-half of the furnishings with an estimated value of $12,500. For liabilities, the plaintiff listed $18,964 of credit card debt and the defendant listed $4050 of credit card debt and store charges.

The court also found, however, that the grant of stock options by NetSelect, Inc., to the defendant was made for future services to be performed after the final separation of the parties on September 3, 1996. Relying on *Bornemann* v. *Bornemann*, 245 Conn. 508, 752 A.2d 978 (1998), the court held that the NetSelect options were not marital assets subject to distribution pursuant to General Statutes § 46b-81.[8] The plaintiff appealed from the court's judgment. Additional facts will be discussed where necessary.

## I

The plaintiff claims that the court improperly found that the defendant's unvested stock options were not

---

[7] The defendant was ordered to provide medical coverage for the minor children so long as he is obliged to pay child support. The court also adjudged that uninsured bill balances and deductibles shall be shared equally by the parents.

[8] General Statutes § 46b-81 (a) provides: "At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the Superior Court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either the husband

marital assets and therefore not subject to distribution. She claims that the decision in *Bornemann,* on which the court relied in concluding that the NetSelect stock options were not a marital asset subject to distribution pursuant to § 46b-81, was not applicable in this case. We disagree.

"Our review is guided by the well established principle that [t]he resolution of conflicting factual claims falls within the province of the trial court . . . [and] [t]he trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole." (Internal quotation marks omitted.) *Bornemann* v. *Bornemann,* supra, 245 Conn. 527.

The plaintiff argues that *Bornemann* does not apply because the defendant in the present case voluntarily left his job, whereas the defendant in *Bornemann* was involuntarily terminated. We conclude that the claimed distinction was not pertinent to the decision in *Bornemann.* In *Bornemann,* the court determined that unvested stock options could be considered marital property. Id., 518–20. It further concluded that to be considered marital property, the "court must determine whether an asset was earned prior to or subsequent to the date of dissolution in order to determine whether the asset is marital property. This approach is common in other jurisdictions that have considered the extent to which unvested stock options represent marital property for the reason that state statutes commonly distinguish between assets earned or acquired prior to separation or dissolution and assets earned or acquired subsequent to separation or dissolution. In determining when unvested stock options were earned, or will be earned, the purpose for which the options were granted

---

or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect."

must be considered. Stock options may be awarded for a variety of purposes—including to compensate the employee for past or present services, or to provide an incentive for future service—that may or may not relate in whole or in part to the period of the marriage." Id., 521–22.

The defendant's employment with NetSelect, Inc., began on November 11, 1998, approximately one month before the court rendered judgment in the dissolution trial. Furthermore, the first 25 percent of the options would not vest until November 11, 1999. In *Bornemann*, the stock options were found to be awarded for past services. Id., 529. In the present case, however, the court found that the stock options were rendered entirely as incentive for future services and therefore were not considered marital assets subject to division.[9] This finding is supported by the facts and it therefore is not clearly erroneous.

## II

The plaintiff next claims that the court improperly awarded nonmodifiable time limited alimony for a period of eleven years because it was inappropriate and inadequate under all the circumstances, including the duration of the marriage, the plaintiff's age, her work experience and the defendant's responsibility for the breakdown of the marriage. We disagree.

"The standard of review of financial awards in dissolution appeals is well settled. Our role as an appellate court is not to retry the facts of the case, substitute our judgment for that of the trial court, or articulate or clarify the trial court's decision. . . . In reviewing the trial court's decision under [an abuse of discretion] standard, we are cognizant that [t]he issues involving

---

[9] Furthermore, in her brief, the plaintiff does not argue that the court improperly found that the stock options were awarded for future services. She simply claims that *Bornemann* should not have been applied in this case.

financial orders are entirely interwoven. The rendering of judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other. . . . When reviewing claims that the trial court abused its discretion in making these awards, every reasonable presumption should be given in favor of its correctness." (Citations omitted; internal quotation marks omitted.) *Cordone* v. *Cordone*, 51 Conn. App. 530, 532–33, 752 A.2d 1082 (1999).

"When awarding time limited alimony, the trial court need not make a detailed finding justifying its award. . . . Although a specific finding for an award of time limited alimony is not required, the record must indicate the basis for the trial court's award. . . . There must be sufficient evidence to support the trial court's finding that the spouse should receive time limited alimony for the particular duration established. If the time period for the periodic alimony is logically inconsistent with the facts found or the evidence, it cannot stand." (Citation omitted; internal quotation marks omitted.) *Ashton* v. *Ashton*, 31 Conn. App. 736, 744, 627 A.2d 943, cert. denied, 228 Conn. 901, 634 A.2d 295 (1993).

The court found that during the parties' marriage, the plaintiff taught school for two years in Arizona before her children were born.[10] She has a bachelor of arts degree in education and sociology that she received in 1979. More recently, she was employed at an art gallery and at a preschool. She also is licensed as a real estate sales agent and worked for about two years during the 1980s at her mother's real estate business. She was a publisher of a children's periodical that circulated in southwestern Connecticut.[11]

---

[10] Both parties had agreed that the plaintiff would not work while the children were growing up.

[11] Also, the plaintiff's commitment to raising the twins was to end when they graduate high school, presumably in June, 1999. By that time, the children would be eighteen, having attained such age on January 14, 1999. Pursuant to General Statutes § 46b-215 (a), they lost their status as minors

"Underlying the concept of time limited alimony is the sound policy that such awards may provide an incentive for the spouse receiving support to use diligence in procuring training or skills necessary to attain self-sufficiency." *Markarian* v. *Markarian*, 2 Conn. App. 14, 16, 475 A.2d 337 (1984). We conclude that the court's memorandum of decision and the findings therein indicate that the court's purpose was indeed to provide an incentive for the plaintiff to become self-supporting at some occupation for which she can become reasonably qualified through additional education and training. Having observed the plaintiff during the court proceedings, the trial court is better qualified than we are to evaluate the likelihood that the plaintiff will become self-supporting by the time the alimony order expires. The court, therefore, did not abuse its discretion.

### III

The plaintiff's final claim is that the court's award of alimony was inadequate. We disagree.

"As in the distribution of marital assets, the trial court is afforded broad discretion in making awards of alimony." (Internal quotation marks omitted.) *Milbauer* v. *Milbauer*, 54 Conn. App. 304, 312, 733 A.2d 907 (1999). In the present case, the court ordered the defendant to pay to the plaintiff periodic alimony of $6000 per month for twenty-four months and $4000 per month for an additional nine years.[12] See General Statutes § 46b-86 (a). In addition, the defendant was ordered to pay to the plaintiff $480 per week to support the children until they reach nineteen years of age or graduate sooner from high school. Furthermore, in calculating the plain-

---

on January 14, 1999, and their parents had no statutory obligation to support them after that date.

[12] The alimony order was made subject to earlier termination if the plaintiff remarries, either party dies or if ordered by a court.

tiff's award, the court excluded any evidence regarding the postmajority expenses of the two children.

On appeal, the plaintiff claims that the alimony award of $72,000 per year for two years and $48,000 per year for the remaining nine years is inadequate in view of the plaintiff's needs and the defendant's probable earnings at his new employment, $170,000 in annual salary plus a target bonus of $42,500. She focuses on one of the factors, "station," which General Statutes § 46b-82[13] requires the court to consider in making an alimony award. She maintains that the inclusion of "station," as one of the statutory criteria for an alimony award, refers to the lifestyle or standard of living of the parties during the marriage, including their commensurate expectations for the education and advancement of their children. Relying on that interpretation, she challenges the court's ruling excluding any evidence of the postmajority expenses of the two children.

Agreements between parties regarding the postmajority education of children are required to be in writing. General Statutes § 46b-66; *Hirtle* v. *Hirtle*, 217 Conn. 394, 399, 586 A.2d 578 (1991). Furthermore, in *Lowe* v. *Lowe*, 47 Conn. App. 354, 704 A.2d 236 (1997), this court

---

[13] General Statutes § 46b-82 provides: "At the time of entering the decree, the Superior Court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable, including an order to either party to contract with a third party for periodic payments or payments contingent on a life to the other party. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

reversed that part of the trial court's judgment that enforced an oral stipulation by the father during trial that he would pay for the postmajority education of his three children to the extent that he was financially able to do so. Section 46b-66 provides, with respect to agreements for support of children after reaching eighteen years of age, as follows: "If the agreement is in writing and provides for the care, education, maintenance or support of a child beyond the age of eighteen, it may also be incorporated or otherwise made a part of any such order and shall be enforceable to the same extent as any other provision of such order or decree, notwithstanding the provisions of section 1-1d." In the present case, there never was any written agreement in which the defendant agreed to pay the education expenses of his two children, nor was there such an oral agreement. The court, therefore, properly excluded evidence of the postmajority expenses of the children. The excluded evidence was irrelevant to any issue before the court.

The judgment is affirmed.

In this opinion the other judges concurred.