JANICE MURRAY *v.* PAUL MURRAY
(AC 20847)

Lavery, C. J., and Flynn and O'Connell, Js.

Argued April 24—officially released August 14, 2001

*Christine M. Whitehead,* for the appellant (plaintiff).

*Michael S. Taylor,* with whom were *Wesley W. Horton* and, on the brief, *Louis Kiefer,* for the appellee (defendant).

*Opinion*

FLYNN, J. The plaintiff, Janice Murray, appeals from the judgment of the trial court denying her motion for permission to relocate to California with the parties'

two minor children. On appeal, the plaintiff claims that the court abused its discretion in concluding that the custodial parent's relocation to California is not in the best interests of the children. Specifically, the plaintiff contends that the trial court improperly (1) failed to address or put proper weight on the "family unit factor" set forth in *Ireland* v. *Ireland*, 246 Conn. 413, 717 A.2d 676 (1998) (en banc), (2) failed to focus on whether it was in the best interests of the children to move to California if the plaintiff moved to California, (3) deprived the plaintiff of equal protection of the laws because the court allegedly based its conclusions on gender biased stereotypes, (4) relied on the minor children's opinions rather than on those of the court-appointed guardian ad litem in determining, in part, whether the move is in the best interests of the children, and (5) abused its discretion in denying the plaintiff's motion to reargue in light of certain factual findings made and by not following the opinion of the consulting psychologist in the case. We affirm the judgment of the trial court.

The following facts are relevant to our resolution of this appeal. By virtue of a separation agreement, which was incorporated into the judgment of dissolution in 1996, the plaintiff and the defendant, Paul Murray, share joint legal custody of their two minor children. Under the agreement, the plaintiff has physical custody of the children.[1] The plaintiff and the defendant are both physicians who each have their own established practices. Their marriage was dissolved on December 23, 1996.

Our standard of review regarding factual findings of a trial court is limited. Such findings are binding on this court unless they are clearly erroneous in light of

---

[1] Because the plaintiff has physical custody of the children, we refer to her as the custodial parent.

the evidence, the pleadings and the record as a whole. *Hopfer* v. *Hopfer*, 59 Conn. App. 452, 457, 757 A.2d 673 (2000).

We first turn to the criteria set out in *Ireland* that the court was required to consider in determining whether the plaintiff's relocation to California with the parties' children would be in the best interests of the children. At the outset, however, we note that the plaintiff did not seek an articulation from the court regarding her claims that the court failed to consider properly the *Ireland* criteria. It is the plaintiff's burden to provide an adequate record for our review of those claims. *Baugher* v. *Baugher*, 63 Conn. App. 59, 65 n.10, 774 A.2d 1089 (2001); see Practice Book § 66-5.

In *Ireland*, our Supreme Court adopted the criteria as set forth in *Tropea* v. *Tropea*, 87 N.Y.2d 727, 740–41, 665 N.E.2d 145, 642 N.Y.S.2d 575 (1996), as the criteria that Connecticut courts should consider in relocation cases. *Ireland* v. *Ireland*, supra, 246 Conn. 433. The court also stated that the guiding principle to be applied in such cases is the best interests and welfare of the children involved. Id., 419. After noting that the General Assembly and our courts have traditionally eschewed defining the term, "best interests of the child," the court endorsed the use of the *Tropea* criteria for making that determination in future relocation cases. Id., 433.

The first of those factors is "[e]ach parent's reasons for seeking or opposing the move . . . ." (Internal quotation marks omitted.) Id., 431. In its memorandum of decision, the court addressed each party's reasons. The court found that "[t]he plaintiff intends to move to California with the children if permitted by the court for the purposes of marrying her boyfriend, Dan." The court found that by so moving and marrying, the plaintiff would "reach her goal of raising the children in a two-parent home . . . without the necessity of working on

a full-time basis or the assistance of a nanny." The court also found credible, however, the testimony of a former mutual friend of the parties that another reason for the plaintiff's move to California is to "separate herself from her ex-husband and avoid the need to deal with him on a regular basis." The court found that the defendant opposed the move "for the love of his children and the need to be an active participant in their maturation and development." The court did not find that "hatred" for his ex-wife was one of the defendant's reasons for opposing the move. We conclude, therefore, that the court did consider the reasons why each of the parties took their respective positions supporting and opposing the move, as *Ireland* requires.

The second *Ireland* factor involves "the quality of the relationships between the child and the custodial and noncustodial parents . . . ." (Internal quotation marks omitted.) Id., 431–32. We note that the plaintiff and the defendant in this case share joint legal custody and that the children's physical residence has been with the plaintiff. The court's memorandum of decision is replete with factual findings concerning the children's relationships with their parents. The court found that both children love each parent and that they are well adjusted, good students. The court concluded that "[t]here is no doubt that both children have strong bonds to each parent." A careful reading of the court's memorandum of decision makes it clear that the court considered the children's bonds to each parent.

The third *Ireland* factor to be considered in relocation cases is "the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent . . . ." (Internal quotation marks omitted.) Id., 432. The court specifically found that the move from Connecticut to California will have a "deleterious effect" on the defendant's relationship with his children. The court found that the quality and quantity of the

defendant's contact "will be negatively impacted," in part, because of the defendant's arduous work schedule as a physician. The court further found that the defendant presently lives in Simsbury, the plaintiff lives in West Hartford, and visitation is regularly scheduled and carried out each week. The court determined that the regular weekly visitation schedule, which both children enjoy, will be "thwarted." Among the court's other salient findings was that the children "will not have weekly contact for dinners, sporting and school events, and biweekly overnight stays with their father while living 3000 miles away." The court, therefore, properly considered that factor of the *Ireland* inquiry. We further conclude that those findings adequately addressed the fifth factor concerning "the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements."[2] (Internal quotation marks omitted.) Id., 432.

The fourth *Ireland* factor for determining whether the relocation is in the children's best interests is "the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move . . . ." Id. Although the court determined from the evidence before it that the move would certainly enhance the plaintiff's own emotional and economic needs, the court also found that the move would not enhance the children's economic, social or

---

[2] The court concluded in relevant part: "In addition to the negative impact the move will have on the children, the children's relationship with their father will be damaged by the visitation schedule proposed by the plaintiff, guardian ad litem and evaluator. The father's profession requires him to arrange his schedule to see the children on a regular basis. The move to California with phone contact or computer video access is not a sufficient substitute for the children and their father. Watching a tape delay of a soccer game or a school award is not the same as 'being there,' to not only the children but their noncustodial parent. While the mother intends to raise her children in a 'two parent household' in California, one of those parents is not the natural father, who has been financially and psychologically supportive to date."

educational needs. The court found that the plaintiff's voluntary cutback from her full-time position to a part-time position would not be replaced by full-time employment in California and that the stepfather would not be obligated to extend financial support to the children. There is no evidence in the record that the plaintiff, who is highly educated, desires to relocate to enhance her own educational opportunities. Further, we are satisfied that the court adequately considered the children's educational opportunities in its finding that the West Hartford public school system successfully addresses the children's educational needs.

The sixth and final *Ireland* factor that the court considered is "the negative impact, if any, from continued or exacerbated hostility between the custodial and non-custodial parents, and the effect that the move may have on any extended family relationships." (Internal quotation marks omitted.) Id. Here, the court found that although, for reasons it specified, there was tension between the parties, they have insulated their children from it. The court also found that the children would miss contact with certain cousins if required to move across the country.[3]

We note that the plaintiff does not claim that the court's factual findings are clearly erroneous. Rather, her argument focuses, in part, on the weight the court placed, or did not place, on the various factors articulated in *Ireland*. See id., 434 (no single factor carries dispositive weight). As we previously discussed, we cannot determine the amount of weight that the court actually placed on any one of those factors in the absence of an adequate record indicating how the court weighed evidence in relation to each factor and where the plaintiff failed to seek an articulation of the court's

---

[3] The court's memorandum of decision reflects that the court considered each of the factors within the burden shifting context as set forth in *Ireland*.

reasoning. "[T]he resolution of conflicting factual claims falls within the province of the trial court . . . [and] [t]he trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole." (Internal quotation marks omitted.) *Hopfer* v. *Hopfer*, supra, 59 Conn. App. 457.

We now turn to the plaintiff's claim that the court failed to address or to afford proper weight to the "family unit" factor. In *Ireland*, our Supreme Court stated that "[i]t may not be realistic to try to preserve completely the quality and nature of the relationship that the noncustodial parent enjoyed with the child, especially if such preservation is maintained at the cost of the custodial parent's ability to start a new, potentially improved life for herself or himself and the child." *Ireland* v. *Ireland*, supra, 246 Conn. 422. In determining what is in the children's best interests, the trial court must consider what is in the custodial parent's interest because that interest is interrelated with the children's best interests. Id., 422–23.

In the present case, the court *did* address each of the six factors under *Ireland* and, in those findings, necessarily evaluated the impact, not only on the defendant but principally on the members of the "new family unit," i.e., the plaintiff and each child. The court considered the plaintiff's reasons for wanting to relocate, the quality of the relationship between the plaintiff and her children, the degree to which the plaintiff's and the children's lives may be enhanced economically, emotionally and, in the children's case, educationally, and the negative impact of the hostility between the custodial and noncustodial parents. The court considered all six *Ireland* factors as they relate to the new family unit and, using its discretion, adjudicated the matter on the basis of what was in the best interests of the children. We conclude that the court did consider the effects that

the relocation to California would have on the new family unit. We therefore find no merit to the plaintiff's claim.

The *Ireland* court stated that sometimes a move that is in the custodial parent's best interests also may be in the children's best interests because the relocation will remove the children from the vortex of contentious parents or provide other opportunities to the children or their custodial parent for financial, emotional or educational improvement. The court, nonetheless, adopted the *Tropea* factors as the guide for trial courts to follow in determining relocation cases. We find that, in this case, the court carefully applied the *Tropea/Ireland* factors in light of the evidence and did not abuse its discretion.

We next turn to the plaintiff's assertion that the court improperly failed to focus on whether it was in the best interests of the children to move to California if the plaintiff moved to California. We recognize that in a free country a person may travel or reside wherever she or he pleases. See id., 427 ("custodial parent with potentially bright prospects on a distant horizon should not be tethered indefinitely to the noncustodial parent's choice of residence, as long as the proposed relocation is in the best interests of the child"); *Moore* v. *Ganim*, 233 Conn. 557, 593 n.49, 660 A.2d 742 (1995) (right to travel interstate is implicit fundamental right guaranteed by federal constitution). We also note that the court did not change the order of physical custody here.[4] Although we appreciate the conundrum that theoretically can be created in a situation in which the party having physical custody does in fact move and the children are left without a physical custodian, the court

---

[4] Because there was abundant evidence in the record demonstrating that the plaintiff is an excellent parent, there was no reason to transfer custody of the children to the defendant.

was not confronted with such a situation here because the plaintiff testified that she would *not* move if her motion was denied. As the trier of fact, the court was entitled to believe her. *In re Deana E.*, 61 Conn. App. 197, 208, 763 A.2d 45 (2000), cert. denied, 255 Conn. 941, 768 A.2d 949 (2001). We therefore find this claim to be without merit.

We next turn to the plaintiff's claim that the court violated her constitutional right to equal protection because the court allegedly based its judgment on gender biased stereotypes of women. Specifically, the plaintiff asserts that the court (1) accorded vastly different weight and deference to the parties' career choices, (2) rewarded the defendant for "his almost gender-comic behavior while penalizing [the plaintiff] for her gender appropriateness" and (3) did not address the plaintiff as "doctor" on the two occasions the court addressed her, but referred to or addressed the defendant as "doctor" seventeen times. We are not persuaded.

As we noted in *Wendt* v. *Wendt*, 59 Conn. App. 656, 697, 757 A.2d 1225, cert. denied, 255 Conn. 918, 763 A.2d 1044 (2000), "a charge of gender bias against a trial judge in the execution of his or her duties is a most grave accusation. It strikes at the heart of the judiciary as a neutral and fair arbiter of disputes for our citizenry. Such an attack travels far beyond merely advocating that a trial judge ruled incorrectly as a matter of law or as to a finding of fact, as is the procedure in appellate practice. A judge's personal integrity and ability to serve are thrown into question, placing a stain on the court that cannot easily be erased.

"Attorneys should be free to challenge inappropriate legal proceedings, a court's perceived partiality without the court misconstruing such a challenge as an assault on the integrity of the court. Such challenge should,

however, be made only when substantiated by the trial record." (Internal quotation marks omitted.)

As in *Wendt*, the record in this case does not support the plaintiff's charge. We first observe that there is simply no evidence in the record that the plaintiff's proposed move was dictated by some necessary professional career choices, much less that the court gave more weight and deference to the male defendant's career choices. Instead, the court found that the plaintiff's move was influenced by her remarriage plans to an individual whose career has evidently placed him on the West Coast where, when married, they intended to live.

Similarly, we find no basis in the record to justify the plaintiff's second allegation that somehow the court "rewarded" the male defendant's "gender-comic behavior" while penalizing the plaintiff's "gender appropriateness." We note, in this regard, that at one point in its decision, the court did find that the defendant communicated with the plaintiff by typed letters and addressed the plaintiff as Mrs. Murray, rather than by her professional title, Dr. Murray. The court characterized some of the defendant's remarks as "insensitive and inappropriate," including his references to court-ordered alimony checks as an "allowance." The judge made no such findings against the plaintiff.

The plaintiff's claim misconstrues the court's focus in relocation cases, namely, whether the proposed relocation is in the children's best interests. The defendant's pettiness and cruel remarks made in private correspondence to the plaintiff bore no relevance to the issue of whether the proposed relocation to California is in the children's best interests. With regard to the plaintiff's third argument, we note that the court merely followed

a pattern of addressing the plaintiff that was set by her counsel.[5]

What the plaintiff is then left with is the faulty premise that a judge of one sex who rules against a party of another sex is gender biased. Adverse rulings alone do not constitute bias. Id., 696. Accordingly, the plaintiff's argument lacks logic.

A proper premise would be that a judge of one sex who rules against a party of the opposite sex on the basis of a predisposition against all members of that opposite sex or, without such a general disposition, nonetheless rules on the basis of the litigants' genders, is biased. It goes without saying that a litigant must substantiate such a claim from the record of conduct at trial. Unfortunately, the false premise that the plaintiff's counsel has advanced to argue gender bias against the trial judge in this case is evidence of the very gender bias, albeit in reverse, of which she has unjustly accused the judge. As we discussed previously, there is no evidence in the record that the court was gender biased in rendering its decision in the present case. We conclude, therefore, that the plaintiff's claim is without merit.

---

[5] At the outset of the plaintiff's testimony, the following colloquy between the plaintiff and her counsel occurred:

"Q. Janice, are you the petitioner in this action?

"A. Yes.

"Q. And are you seeking to get the court's permission to move with your children to California?

"A. Yes.

"Q. How old are your children, Janice?

"A. Danielle is six, and Justin will be eight on March 22nd.

"Q. By the way, you're a physician.

"A. Yes.

"Q. And your former husband is a physician.

"A. That's correct.

"Q. I'm going to refer to you as Janice through this action. Is that is all right with you—

"A. Yes.

"Q.—to keep the confusion down. Okay. . . ."

We next consider the plaintiff's claim that the court improperly gave weight to the children's desire not to relocate as opposed to the contrary opinion of the court-appointed guardian ad litem. The court properly was concerned with what was in the best interests of the children. We therefore are not surprised that the court would give some weight to the views of young persons who had reached the age of reason and were the focus of a best interests determination, as opposed to the contrary view of a guardian ad litem. This was a matter within the court's discretion, which the court did not abuse. See *Hopfer* v. *Hopfer*, supra, 59 Conn. App. 460.

We need not tarry in considering the plaintiff's remaining claim that the court improperly denied her motion for reargument on the ground that the court misconstrued the testimony of Anne Phillips, the consulting psychologist and evaluator in the case. We review claims that the court improperly denied a motion for reargument under the abuse of discretion standard. *Hartford* v. *Pan Pacific Development (Connecticut), Inc.*, 61 Conn. App. 481, 487, 764 A.2d 1273, cert. denied, 256 Conn. 913, 772 A.2d 1126 (2001). When reviewing a decision for an abuse of discretion, "every reasonable presumption should be given in favor of its correctness." (Internal quotation marks omitted.) *Hopfer* v. *Hopfer*, supra, 59 Conn. App. 459.

At the hearing, the court asked Phillips the ultimate question regarding whether it was in the children's best interests to relocate. Her answer clearly indicated that it was not.[6] The court's finding on this issue, therefore,

---

[6] The following colloquy between the court and Phillips occurred:

"Q. Ma'am, taking the facts as they exist now, with dad living in Simsbury, mom living in West Hartford, mom being the primary custodial parent, and with the problems that the parties are having in communication, is relocation in the best interest of the children? In other words, relocating with mother to California.

\* \* \*

"A. It's hard for me to answer that just yes and no. It is in the best interest of the children to maintain their relationship with their mother.

is not clearly erroneous. We further note, as previously discussed, that the court determined that the relocation to California was not in the children's best interests after it carefully considered all of the *Ireland* factors. In short, the court's decision does not rest solely on the court's acceptance of Phillips' opinion, which she

"Q. Ma'am, what I'm asking you, is relocation in the best interest of the children. Because I believe you testified in response to [defense counsel's] question to the effect that relocation is not in the best interest of the children.

"A. In a general sense, no. Relocation, what is in the best interest of the children is to have a lesser disruption in their life and to have easier access to both parents. I do not believe that it is catastrophic or significantly deleterious to the children to relocate.

"Q. Ma'am, is it in their best interest. Not is it deleterious or disturbing to the children. Is it in the children's best interest to relocate?

"A. No."

Counsel for the plaintiff and the defendant thereafter engaged Phillips in the following colloquy:

"[Plaintiff's Counsel]: Doctor, is it in the best interest of the children to remain here if their mother is personally and professionally very sad and unhappy?

"A. No.

"[Plaintiff's Counsel]: Is it in the best interest of the children if [the plaintiff] moves, that they move with her?

"A. Yes.

\* \* \*

"[Defendant's Counsel]: On the professional—you don't have any reason to believe that [the plaintiff] would be happier working in California or Texas than in New Haven or Hartford, do you?

"A. No.

"[Defendant's Counsel]: So when the questions were asked about her professional happiness, going to California isn't a particular relevant issue on her professional happiness. Is that correct?

"A. Not that I'm aware of.

\* \* \*

"[Plaintiff's Counsel]: If she were professionally able to work part time, and as a result, were more available to her children, would that be in the best interest of the children?

"A. Yes.

"[Plaintiff's Counsel]: And if she could do that in California, would that be desirable for the children?

"A. Yes.

"[Defendant's Counsel]: And you're aware that she is working part time and is therefore available for the children now?

"A. Yes."

later sought to distinguish in her affidavit attached to the plaintiff's motion for reargument. We conclude that the court's denial of the plaintiff's motion for reargument was not an abuse of discretion.

The judgment is affirmed.

In this opinion the other judges concurred.