******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IRO B. ALTRAIDE *v.* IBIBIA ALTRAIDE
(AC 35409)

Gruendel, Alvord and Mihalakos, Js.

*Argued April 24—officially released October 7, 2014*

(Appeal from the Superior Court, judicial district of Hartford, Westbrook, J. [pendente lite order; judgment]; Bozzuto, J. [motions for contempt and to modify].)

*Ibibia Altraide,* self-represented, the appellant (defendant).

*W. Anthony Stevens, Jr.,* for the appellee (plaintiff).

*Opinion*

GRUENDEL, J. The self-represented defendant, Ibibia Altraide, appeals from the judgments of the trial court dissolving his marriage to the plaintiff, Iro B. Altraide, and deciding certain postjudgment motions. The defendant claims that the court abused its discretion by (1) ordering him to pay child support pendente lite, (2) awarding the plaintiff alimony, child support, attorney's fees, and sole custody of their child in the dissolution, and (3) deciding two postjudgment motions, specifically, granting the plaintiff's postjudgment motion for contempt[1] and denying the defendant's postjudgment motion for modification.[2] We dismiss as moot the defendant's claim regarding the pendente lite order and affirm the judgments of the trial court in all other respects.

The following facts and procedural history are relevant to our resolution of this appeal. The plaintiff and the defendant were married in Port Harcourt, Nigeria, in 2006. After moving to Connecticut, the couple had a child in 2009. Throughout the marriage there were several periods of separation and reconciliation, culminating in a complaint for legal separation filed by the plaintiff on March 16, 2012.

On April 4, 2012, the court issued a pendente lite order requiring, inter alia, the defendant to pay the plaintiff $228 per week in child support until a final judgment could be rendered. On January 24, 2013, a trial was held and the court thereafter rendered a final judgment dissolving the marriage and ordering, inter alia, (1) the defendant to pay the plaintiff $200 per week in alimony for a period of three years or until such time as the plaintiff obtained full-time employment, (2) the defendant to pay the plaintiff $228 per week in child support, and (3) the plaintiff to receive sole custody of the child.

Following the trial, the plaintiff filed several motions for contempt alleging that the defendant had disregarded the court's order to pay alimony. The court held three contempt hearings in April, July, and September of 2013. At each of the hearings, the court found that the defendant had failed to pay alimony and determined the amount in arrearage. The court later found the defendant in contempt and, on September 17, 2013, the defendant was ordered incarcerated for failure to comply with the court's alimony order. On that same day, the defendant made a $1000 payment to the plaintiff and was released from jail. This appeal followed.

We begin by setting forth the standard of review governing all of the defendant's claims. "The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts." (Internal

quotation marks omitted.) *Borkowski* v. *Borkowski*, 228 Conn. 729, 739, 638 A.2d 1060 (1994). "[T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Utz* v. *Utz*, 112 Conn. App. 631, 634, 963 A.2d 1049, cert. denied, 291 Conn. 908, 969 A.2d 173 (2009).

I

The defendant first argues that the court abused its discretion by awarding the plaintiff pendente lite child support payments in the amount of $228. We do not reach the merits of this claim, as the question presented is moot.[3]

"Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [this] court's subject matter jurisdiction . . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable." (Citations omitted; internal quotation marks omitted.) *State* v. *Preston*, 286 Conn. 367, 373–74, 944 A.2d 276 (2008). Pendente lite orders are temporary orders of the court that are necessarily extinguished once a final judgment has been rendered. *Sweeney* v. *Sweeney*, 271 Conn. 193, 201, 856 A.2d 997 (2004). Once a final judgment has been rendered, an issue with respect to a pendente lite order is moot because an appellate court can provide no practical relief. Id. As a result, an appellate court lacks subject matter jurisdiction over a pendente lite order after the trial court has rendered a final judgment. Id.

In the present matter, the pendente lite order was issued on April 4, 2012. That order remained in effect until January 24, 2013, when the marriage was dissolved and a final judgment was rendered by the court. When the final judgment was rendered, the pendente lite order ceased to exist. Accordingly, the issue on appeal is moot and, as a result, we do not address the merits of the defendant's claim. See *Brown* v. *Brown*, 69 Conn. App. 209, 210, 794 A.2d 550 (2002).

II

The defendant next claims that the court abused its discretion in awarding alimony, child support, attorney's fees, and custody of the child to the plaintiff. We disagree.

The law regarding financial orders in a marital disso-

lution action is well settled. "[G]reat weight is given to the judgment of the trial court because of its opportunity to observe the parties and the evidence. Moreover, the power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage. . . . For that reason, we allow every reasonable presumption . . . in favor of the correctness of [the trial court's] action." (Citation omitted; internal quotation marks omitted.) *Unkelbach* v. *McNary*, 244 Conn. 350, 366, 710 A.2d 717 (1998).

A

The defendant claims that the court erred in awarding the plaintiff alimony. Specifically, the defendant argues that the alimony order was excessive and unsupported by the facts. We disagree.

General Statutes § 46b-82 governs the court's ability to award alimony. It provides in relevant part that a court, in deciding whether to award alimony, "shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award [regarding the assignment of property] . . . and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment." General Statutes § 46b-82 (a). Although the court must consider all of the factors, an express finding on each is not necessary. *Cushman* v. *Cushman*, 93 Conn. App. 186, 191, 888 A.2d 156 (2006). The trial court must, however, indicate a basis for the amount and the duration of the award, and show facts that logically support it. *Nashid* v. *Andrawis*, 83 Conn. App. 115, 122–23, 847 A.2d 1098, cert. denied, 270 Conn. 912, 853 A.2d 528 (2004).

In the present case, the court properly considered the alimony factors and articulated facts that logically supported its decision to award alimony of $200 per week to the plaintiff. After considering the evidence presented by both parties, the court made several findings, all of which support the basis for the award. First, the court considered the station, occupation, amount and sources of income of the parties. The court heard testimony that the defendant had an established career as an engineer, while the plaintiff had only recently finished graduate school and was employed on a part-time basis. In fact, financial affidavits confirmed that the defendant earned a weekly income that was greater than four times the amount earned by the plaintiff. The court also found that the defendant had earned additional income from a rental apartment located above his residence.

Next, the court considered the needs of parties, and

the desirability and feasibility of the plaintiff securing employment after she was awarded sole custody of the parties' minor child. There was evidence before the court that the plaintiff's expenses, although modest, greatly exceeded her income. Finally, the court considered the length of the marriage and the causes of its dissolution. The plaintiff testified at the trial that the defendant once reacted to a domestic violence incident involving the parties by shutting off the utilities at the plaintiff's residence. The plaintiff also testified that, on a separate occasion, the defendant caused the couple's child to stop receiving government aid. The court credited this testimony and found that "[t]he plaintiff has suffered great financial hardship largely because of the acts of the defendant." These findings of fact adequately support the court's decision to award alimony.

The alimony order was limited to a period of three years or until such time as the plaintiff obtained full-time employment. "Underlying the concept of time limited alimony is the sound policy that such awards may provide an incentive for the spouse receiving support to use diligence in procuring training or skills necessary to attain self-sufficiency." (Internal quotation marks omitted.) *Hopfer* v. *Hopfer*, 59 Conn. App. 452, 460, 757 A.2d 673 (2000). In the present case, the court heard testimony that the plaintiff had recently completed graduate school in 2012, and had been actively pursuing full-time employment while also caring for a young child. The court therefore properly found that three years was a reasonable timeframe to encourage the plaintiff's self-sufficiency. Accordingly, we conclude that awarding time limited alimony under these circumstances does not constitute an abuse of discretion by the court.

B

Next, we turn to the child support order. The defendant argues that the court erred by not considering the plaintiff's receipt of social security assistance, pendente lite payments, and alimony payments in setting the award for child support. We disagree.

General Statutes § 46b-84 governs the court's power to award child support. The statute requires in relevant part that, upon divorce, parents will continue to be responsible for "maintain[ing] the child according to their respective abilities . . . ." General Statutes § 46b-84 (a). Section 46b-84 (d) provides: "In determining whether a child is in need of maintenance and, if in need, the respective abilities of the parents to provide such maintenance and the amount thereof, the court shall consider the age, health, station, occupation, earning capacity, amount and sources of income, estate, vocational skills and employability of each of the parents, and the age, health, station, occupation, educational status and expectation, amount and sources of income, vocational skills, employability, estate and

needs of the child."

Similar to the order for alimony, the court reviewed the positions of both parties and determined that the defendant had the respective ability to contribute $228 per week to support the child.[4] Additionally, the court considered testimony from the plaintiff regarding the child's age and health.[5] Finally, the court found that the child support order was consistent with the child support guidelines, as set forth in § 46b-215a-1 et seq. of the Regulations of Connecticut State Agencies, for a person with a similar weekly income as the defendant.[6]

The defendant argues that the court should have considered additional factors when setting the child support order, including the plaintiff's receipt of social security assistance, the pendente lite payments, and the alimony order. The defendant has not demonstrated, however, that the court failed to consider the factors in § 46b-84 (d), and "we presume that the court, in rendering its judgment . . . undertook the proper analysis of the law and the facts." (Internal quotation marks omitted.) *Brett Stone Painting & Maintenance, LLC* v. *New England Bank*, 143 Conn. App. 671, 681, 72 A.3d 1121 (2013). Therefore, we conclude that the court properly reviewed the statutory factors and did not abuse its discretion.

C

The defendant argues that the court improperly ordered the defendant to pay the plaintiff's attorney's fees even though he could not afford to retain his own counsel. We disagree.

In this case, the plaintiff's counsel, Attorney Ronald T. Scott, represented the plaintiff pro bono and requested, at the conclusion of the trial, that attorney's fees be awarded because of the unexpected effort required to respond to the defendant's numerous motions. In the period of time between the original divorce filing and the final judgment, the defendant filed thirty-four motions with the court.[7]

The law regarding an award of attorney's fees is well settled. General Statutes § 46b-62 governs the award of attorney's fees in dissolution proceedings and provides in relevant part that "the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in [§] 46b-82." Additionally, a court may order the full amount of reasonable attorney's fees, even when the attorney was providing representation for free or at a reduced cost. See *Benavides* v. *Benavides*, 11 Conn. App. 150, 156, 526 A.2d 536 (1987).[8]

As discussed in part II A of this opinion, the court considered the statutory factors under § 46b-82 and determined each party's financial capacity. The court had before it evidence that the plaintiff was of little means and did not have the resources to retain counsel.

whereas the defendant was employed full-time and earned a substantial salary. Given the large disparity in the respective income of the parties and the plaintiff's lack of resources, we conclude that the court did not abuse its discretion in awarding reasonable attorney's fees.

D

The defendant further argues that the court's order awarding the plaintiff sole custody of the child was arbitrary and lacked a basis in fact. We do not agree.

General Statutes § 46b-56 provides the legal standard for determining child custody issues. The statute requires that the court's decision serve the child's best interests. *Wilson* v. *Wilson*, 38 Conn. App. 263, 269, 661 A.2d 621 (1995). "In determining what is in the best interests of the child, the court is vested with a broad discretion. . . . [W]e are not privileged to usurp that authority or to substitute ourselves for the trial court." (Internal quotation marks omitted.) *Lederle* v. *Spivey*, 113 Conn. App. 177, 185, 965 A.2d 621, cert. denied, 291 Conn. 916, 970 A.2d 728 (2009).

Although the court did not state a specific factual basis in its memorandum of decision before awarding the plaintiff sole custody, the record is sufficient to support the custody order. During the trial, the court heard the testimony of Attorney Seon Bagot, the guardian ad litem assigned to represent the interests of the parties' child. Bagot testified that he had met with the parents and the child, conducted home visits, and contacted the child's pediatrician and teacher. Additionally, he reviewed state records and monitored e-mail communications between the parties. After reviewing this information, Bagot concluded that the plaintiff should receive sole custody of the child. This recommendation was based on several factors, including: (1) the defendant's intention of moving to Nigeria, (2) the defendant's inconsistent availability due to his work schedule, and (3) the defendant's short and infrequent visits with the child. This record sufficiently supports the court's decision to award sole custody to the plaintiff, and that decision does not constitute an abuse of discretion.

III

Finally, the defendant challenges two of the court's postjudgment orders. The defendant argues that the court erred in granting the plaintiff's motion for contempt and in denying the defendant's motion for modification. We disagree.

A

The defendant argues that the court improperly found him in contempt on July 30, 2013. In particular, he argues that the court's finding of contempt was based solely on "mere representations from the plaintiff." We

do not agree.

"Recently, our Supreme Court clarified the standard of review applicable to civil judgments of contempt in *In re Leah S.*, 284 Conn. 685, 935 A.2d 1021 (2007). The court explained: '[O]ur analysis of a judgment of contempt consists of two levels of inquiry. First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding.' " *Behrns* v. *Behrns*, 124 Conn. App. 794, 808, 6 A.3d 184 (2010).

In analyzing the defendant's claim on appeal, some additional facts and procedural history are helpful. On January 24, 2013, the court rendered a dissolution judgment that, in part, ordered the defendant to pay $200 in alimony to the plaintiff each week for three years or until she obtained full-time employment. On April 30, 2013, the court found that the defendant had failed to make a single alimony payment, resulting in an arrearage of $2600. The court ordered the arrearage to be paid at a rate of $20 per week until it was paid in full, but did not find the defendant in contempt. On July 30, 2013, the court found that the defendant had still not made any payment towards either the current alimony order or the arrearage. Upon concluding that the "defendant willfully violated the court's order dated January 24, 2013," the court held the defendant in contempt.

We begin by reviewing the alimony order to determine whether it is sufficiently clear. The alimony order from January 24, 2013, required, in relevant part, that "[t]he defendant shall pay the plaintiff $200 a week in alimony for three years or until such time as the plaintiff attains full-time employment." Although the defendant argues that this order was "vague," this argument is without merit. The court order required the defendant to pay the plaintiff a definite amount of money at specified intervals. We therefore conclude that the alimony order was clear and unambiguous, and that the defendant was properly placed on notice that he was required to pay the aforementioned amount of alimony to the plaintiff.

Next, we turn to whether there was a proper factual basis for the court's finding that the defendant had wilfully refused to comply with the court order. "[I]f a finding of wilful [contempt] is based on a court's determination of the credibility of relevant testimony at trial, we will overturn it only if the record demon-

strates a manifest abuse of discretion." *LaBossiere* v. *Jones*, 117 Conn. App. 211, 224, 979 A.2d 522 (2009). In this case, the court heard the following relevant testimony from the defendant. On July 30, 2013, the defendant testified that he earned a weekly income of $1160 per week. This is essentially the same weekly income that was reported on his financial affidavit during the dissolution proceedings.[9] The court also heard from the plaintiff's counsel, who asserted that the defendant had "not paid one penny of alimony or arrearage payment." After hearing from both the plaintiff and the defendant, the court found that, despite the defendant's unchanged weekly income since the initial order, he had steadfastly refused to make even partial payment in compliance with the alimony order.[10] In conclusion, the court did not abuse its discretion by finding the defendant in wilful contempt of the court's order.

B

The defendant last argues that his postjudgment motion for modification was erroneously denied. We disagree.

Modification of orders for alimony or child support is governed by General Statutes § 46b-86. Section 46b-86 (a) requires that the moving party demonstrate that one of the parties had sustained a "substantial change in . . . circumstances . . . ." This change in circumstances must be one that arose after the original dissolution judgment was rendered. *Borkowski* v. *Borkowski*, supra, 228 Conn. 736. This requirement avoids giving a party an opportunity to relitigate an already settled issue. Id., 735–36.

In the present case, the defendant was given an opportunity to establish a substantial change in circumstances during a two day hearing on September 17 and 18, 2013. At that hearing, the defendant argued that (1) the plaintiff had increased her income since the dissolution, (2) he had since become engaged to be married, (3) he had suffered a reduction in income due to a change in his tax filing status, and (4) he had high expenses due to a large residential mortgage. The court addressed each claim separately. First, the court found that the plaintiff's income had not increased since the marital dissolution because her temporary job ended in April and she had not yet found full-time employment. Second, the court found that the defendant's recent engagement was not a factor that altered his ability to pay alimony. Third, the defendant's change in tax filing status was not a proper ground for modification. Finally, the court held that the mortgage expenses could not be considered because they were part of the property settlement in the judgment of dissolution and not a substantial change since the final judgment. The defendant therefore failed to carry the burden of showing that a substantial change in circumstances had occurred. Accordingly, we conclude that the court did not abuse

its discretion by denying the defendant's motion for modification.

The defendant's appeal regarding the pendente lite order is dismissed as moot. The judgments are affirmed in all other respects.

In this opinion the other judges concurred.

[1] The defendant additionally argues that the court refused to rule on a contempt motion filed against the plaintiff. The record, however, contains no indication from the court that it would not consider the motion for contempt or that the defendant was barred from seeking a hearing and adjudication of his motion. On the record before us, we thus conclude that the defendant has not appealed from a final judgment. See *Ramin* v. *Ramin*, 281 Conn. 324, 337 n.7, 915 A.2d 790 (2007); *Ahneman* v. *Ahneman*, 243 Conn. 471, 478–80, 706 A.2d 960 (1998). We therefore dismiss the defendant's claim for lack of subject matter jurisdiction. See *Ahneman* v. *Ahneman*, supra, 478–79.

[2] The defendant also argues that the court lacked jurisdiction over this case because a prior divorce action had been filed in Nigeria. The test for jurisdiction over marital actions is domicile. *Litvaitis* v. *Litvaitis*, 162 Conn. 540, 545, 295 A.2d 519 (1972). The record confirms, based on the testimony of the plaintiff and the defendant, that both parties were residents of Connecticut for twelve months prior to the filing of the complaint. Jurisdiction in this state is therefore proper.

The defendant makes a bevy of other arguments which can be generally categorized as allegations of prejudice and bias by the trial judge. This court declines to review these claims that are improperly briefed and lack any legal support. See *Barros* v. *Barros*, 309 Conn. 499, 503 n.4, 72 A.3d 367 (2013) (claims asserted without citation to legal authority not reviewed).

[3] Although it is well established that a pendente lite child support order is an immediately appealable final judgment; *Gong* v. *Huang*, 129 Conn. App. 141, 148, 21 A.3d 474, cert. denied, 302 Conn. 907, 23 A.3d 1247 (2011); it is unclear from the record in the present case whether the defendant appealed from the pendente lite order. We need not resolve this ambiguity in light of our conclusion that his claim is moot.

[4] See part II A of this opinion for a discussion of the court's consideration of the financial affidavits of both parties, as well as the testimony regarding the parties' educational background and current employment status.

[5] The plaintiff testified that their child was born on August 6, 2009. Additionally, the plaintiff testified that the child was born "almost five months premature" and therefore required physical and occupational therapy for about two years.

[6] The defendant's financial affidavit states that he earns approximately $1100 in weekly income. The Commission for Child Support Guidelines advise that a person with one child and weekly income of $1100 should pay $241 per week in child support.

[7] Several of these motions appear to serve no other purpose than to delay the proceedings or harass the plaintiff. For example, on June 25, 2012, the defendant filed a motion for counsel fees even though he was a pro se party. On August 24, 2012, he filed a motion for an immediate hearing followed by a September 4, 2012 motion for continuance, which was followed by a September 21, 2012 motion for an immediate hearing.

[8] In *Benavides*, this court reversed the trial court's decision to reduce an award of attorney's fees on the basis that the plaintiff had been represented by a nonprofit organization. *Benavides* v. *Benavides*, supra, 11 Conn. App. 156. This court stated: "It would be unreasonable to allow a losing party in a family relations matter to reap the benefits of free representation to the other party. A party should not be encouraged to litigate under the assumption that no counsel fee will be awarded in favor of the indigent party represented by public legal services . . . ." Id., 154.

[9] On January 24, 2013, the defendant signed a financial affidavit which stated a weekly income of $1148.85. The court used this information in setting the initial alimony order of $200 per week. At the motion for contempt hearing, the defendant failed to assert any change in his income that would have negatively impacted his ability to comply with the order.

[10] The defendant additionally argued before the trial court that he was unable to pay the alimony due to weekly expenses of almost $2000. We acknowledge that "[t]he inability of a party to obey an order of the court, without fault on his part, is a good defense to the charge of contempt. . . .

The contemnor must establish that he cannot comply, or was unable to do so." (Citation omitted; internal quotation marks omitted.) *Eldridge* v. *Eldridge*, 244 Conn. 523, 532, 710 A.2d 757 (1998). A party may not, however, choose "to prioritize the payment of his own nonessential expenses over the payment owed to the plaintiff." *Brody* v. *Brody*, 145 Conn. App. 654, 664, 77 A.3d 156 (2013). The defendant's claimed nonessential personal expenses are not a proper basis for his failure to comply with the court's alimony order.