## DEIRDRE ANN KINIRY *v.* ANTHONY J. KINIRY*
### (AC 21175)

Spear, Flynn and Daly, Js.

Argued March 27—officially released August 20, 2002

---

\* On February 19, 2003, the defendant's motion for reconsideration was granted. This decision was subsequently affirmed. See *Kiniry* v. *Kiniry*, 79 Conn. App. 378, 830 A.2d 364 (2003).

*Gary I. Cohen*, for the appellant (defendant).

*Mary Ellen Wynn*, for the appellee (plaintiff).

*Opinion*

FLYNN, J. The defendant, Anthony J. Kiniry, appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Deirdre Ann Kiniry. On appeal, the defendant claims that the court improperly (1) ordered him to pay alimony and child support out of an asset that was awarded to him as part of the court's equitable distribution of the marital property, (2) awarded to the plaintiff a portion of the nonvested stock that the defendant had earned as compensation for employment that did not commence until after the separation of the parties and the filing of the dissolution action, and (3) calculated the percentages and dollar amounts of the assets to be allocated to each of the parties. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. The parties married on May 16, 1981. There were four minor children born of the marriage. Their ages at the time of trial were seventeen, fifteen, twelve and ten. Each party was forty-two years old and in good health at the time of trial.

Both parties received their undergraduate degrees from the University of Connecticut. Thereafter, the plaintiff was employed at an executive search firm in New York City. The defendant began his career on Wall Street as an over-the-counter clerk. Both parties realized great success in their respective fields in a relatively short period of time. The plaintiff became a co-owner of the executive search firm where she had been working and was earning approximately $250,000 to $300,000 per year from the mid-1980s until 1990, when she ceased working after giving birth to the parties'

fourth child. The defendant earned approximately $1 million per year in 1992 and 1993, $445,000 in 1994, and between $700,000 and $1.5 million per year thereafter. The defendant's earnings generally consisted of a base salary and a substantial year-end bonus, which bonus was paid to him at the beginning of the following year.

From the very beginning of the marriage, the parties adopted an affluent style of living, regularly spending more than the substantial amount of money that they earned. They financed this lifestyle by short-term borrowing and running up credit card debt, which they later paid down after receiving the defendant's year-end bonus at the start of the following year. In 1987, the couple moved from New Jersey to Connecticut and purchased a home in New Canaan. It was at about that time that problems had begun to develop in the marital relationship, for which the trial court found that each party bore some responsibility.

In 1996, the defendant entered into a two year employment agreement with Deutsche Bank, which provided him with compensation of $1.2 million per year. On February 20, 1998, the plaintiff brought this action against the defendant for a dissolution of their marriage on the ground of irretrievable breakdown. In October, 1998, the defendant lost his job at Deutsche Bank and in November of that year, he moved out of the family home. On January 3, 1999, the defendant began working with the First Boston division of Credit Suisse Bank, where he was to earn a base salary of $150,000 per year,[1] plus a guaranteed bonus of $850,000 for the first year of employment. The defendant's actual earnings for 1999 totaled $1,482,126. Those earnings were comprised of the defendant's base salary of $142,212, his year-end performance bonus, which

---

[1] Before the time of trial, the defendant's base salary was increased to $165,000 per year.

included $929,283 in cash, and $328,505 in vested and nonvested stock awards,[2] and a longevity bonus of $82,126.[3] Although the defendant earned all of this compensation during 1999, he did not receive his bonus until sometime in February, 2000. His after-tax cash bonus was deposited in a U.S. Trust savings account. According to the defendant's March 8, 2000 financial affidavit, the balance in that account totaled $470,000. Further, in July, 1999, the parties sold the marital home and placed the net proceeds of the sale into an escrow account.

After finding both parties responsible for the marital breakdown, the court noted that after the plaintiff had filed for dissolution, the defendant made a series of expenditures, including vacations and clothing purchases, $30,000 of which the court found was unreasonable and excessive. It further noted that although the plaintiff has significant earning capacity, her earning capacity is limited at the present time because of the time she dedicates to raising the four minor children of the marriage. It also noted that the plaintiff presently works part time and earns approximately $5000 per month but that in about five years, when her youngest child attains high school age, she should be able to return to a full work schedule with earnings equal to or greater than her prior earnings. Although the parties were awarded joint legal custody of the four minor children, the plaintiff was designated the primary residential parent.

The court "carefully considered the criteria set forth in General Statutes §§ 46b-81, 46b-82, 46b-84, and the applicable case law," and ordered the defendant to pay the plaintiff, as unallocated alimony and child support,

---

[2] The stock awards vested as follows: 25 percent immediately; 25 percent on January 15, 2001; 25 percent on January 15, 2002; and 25 percent on January 15, 2003.

[3] The longevity bonus was to vest 100 percent on January 15, 2003.

the sum of $40,000 per month for the five year period commencing August 15, 2000, the date of the court's decision, through August 15, 2005.[4] The court also divided the marital assets at that time. The court's division of the following three assets are relevant to the defendant's claims in this appeal: (1) the proceeds from the sale of the marital home, which were being held in an escrow account, were divided "43.5 percent ($209,398) to the plaintiff and 46.5 percent ($271,976) to the defendant";[5] (2) the $470,000 balance in the U.S. Trust savings account was divided "41.486 percent ($194,983) to the plaintiff and the balance of 58.514 percent to the defendant"; and (3) the defendant's vested and nonvested Credit Suisse Bank stock awards, including any longevity award, were divided "60 percent to the plaintiff and 40 percent to the defendant if, as, and when received by the defendant." Additional facts will be set forth as necessary.

We now turn to the claims raised by the defendant in this appeal. The defendant first claims that the court improperly ordered him to pay alimony and child support out of an asset that it had awarded to him as part of its equitable distribution of the marital property. The defendant makes two claims in support of this argument. First, he claims that the court improperly *ordered* him to pay alimony and child support from his equitable share of the funds contained in the U.S. Trust savings account. The plaintiff points out, however, that the

---

[4] The order further provided that beginning August 15, 2005, through August 14, 2010, the defendant must pay to the plaintiff as unallocated alimony and child support, $20,000 per month plus an additional monthly amount calculated as follows: for each year, August 15, 2005, through August 14, 2010, the defendant shall pay on earned income above $500,000 for each prior calendar year from salary, commission and bonus, 25 percent of said income between $500,000 and $750,000, and 15 percent of earned income in excess of $750,000.

[5] We note that 43.5 percent and 46.5 percent do not total 100 percent. This typographical error is addressed in part III of this opinion.

court's memorandum of decision does not require the defendant to pay the $40,000 unallocated order out of his share of the U.S. Trust account. She states in her brief that "the decision does not compel any particular solution for his cash flow problem." We agree with the plaintiff.

At the outset, we note our standard of review. "We review financial awards in dissolution actions under an abuse of discretion standard. . . . [T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Internal quotation marks omitted.) *Wendt* v. *Wendt*, 59 Conn. App. 656, 660, 757 A.2d 1225, cert. denied, 255 Conn. 918, 763 A.2d 1044 (2000).

The following additional facts are relevant to our resolution of this claim. The defendant presently earns a gross base salary of $165,000 per year, or $13,750 per month. It is not until February of the following year that the defendant receives the lion's share of his earnings, which is the guaranteed bonus that he has earned in the previous year. He claims that in ordering him to make alimony and child support payments of $40,000 per month beginning August 15, 2000, despite its knowledge that his gross monthly income would remain at $13,750 per month until he received his bonus in February, 2001, the court was requiring him to meet alimony and child support payments by depleting an asset that it had awarded to him as part of the equitable property distribution. He contends that the court was effectively ordering him to deplete his share of the funds in the U.S. Trust account because it knew that this was the only way he could meet his alimony and child support obligations.

We disagree with the defendant's characterization of the court's order. A careful reading of the court's

memorandum of decision supports the plaintiff's argument that the court did not compel the defendant to pay the unallocated alimony and child support order from the U.S. Trust account or from any other asset. In addition, the record is devoid of any finding by the court that the only way that the defendant could comply with the order was to deplete the assets that he had been awarded in the marital property distribution. To the contrary, the record reveals that the court was cognizant of how and when the defendant was to receive his earnings. The court specifically noted, however, that the defendant had significant borrowing power[6] and that the parties had routinely borrowed substantial sums of money in the past as a means of financing their lifestyle. There was no indication that the defendant could not continue to employ that method of meeting expenses if he chose to do so. On the basis of the record, we conclude that the court did not order the defendant to meet his alimony and child support obligations by depleting his share of the funds in the U.S. Trust account or by using any other asset.

Second, the defendant claims that the court's decision was improper because it had the effect of requiring him to deplete an asset to pay alimony and child support and is, therefore, contrary to this court's holding in *Schorsch* v. *Schorsch*, 53 Conn. App. 378, 731 A.2d 330 (1999). Specifically, the defendant argues that the court's decision is contrary to *Schorsch* because it effectively treats the defendant's share of cash contained in the U.S. Trust account as both an asset and income. He claims that although the court awarded him a portion

---

[6] The court had before it the defendant's financial affidavits, which reflected his substantial income. The court inferred from those documents and the fact that the defendant frequently had borrowed in the past that he had significant borrowing power. We conclude that the court was entitled to draw this inference because it was reasonable and founded on the facts in evidence. See 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 64b, p. 417.

of that pool of cash as an asset, it then required him to pay over that same asset to the plaintiff in the form of alimony and child support payments as if it were part of his year 2000 income. We disagree.

An analysis of our decision in *Schorsch* leads us to conclude that the holding in that case is inapplicable here. In *Schorsch*, the defendant was seeking a postdissolution modification of his alimony payments. The issue before the court in that case was whether cash, which was realized as a result of the sale of real property awarded to the defendant in the dissolution decree, later should be treated as income for purposes of determining whether there were changed circumstances sufficient to justify a modification decreasing alimony to the other spouse. We held that the trial court improperly included as income the cash generated from the sale because "[t]he mere exchange of an asset awarded as property in a dissolution decree, for cash, the liquid form of the asset, does not transform the property into income." (Internal quotation marks omitted.) Id., 385.

The present case does not involve a postdissolution modification as did *Schorsch*. Further, the defendant's share of the cash in the U.S. Trust account was not treated as both an asset and as income. It was treated solely as an asset, albeit one that represented the residue of the defendant's 1999 earnings. It is not, as contended by the defendant, being transformed by the court into a part of the defendant's year 2000 income simply because he may have felt compelled to use some, or all, of his share of the cash in that account during the 2000 calendar year to pay alimony and child support.

Further, although it is true, as the defendant points out, that he presently receives only $13,750 as his gross base monthly income, the fact remains that the defendant's actual income far exceeds his base salary. Pursu-

ant to §§ 46b-82 and 46b-84, the statutory provisions governing alimony and child support, respectively, the court cannot ignore the fact that the defendant receives a substantial year-end bonus simply because it is not received until the following year. In determining whether alimony shall be awarded, and the duration and amount of the award, and the amount of child support to be awarded, the court *must* consider all of the criteria set forth in §§ 46b-82 and 46b-84, including the "amount and sources of income" of each party. We note that those statutory provisions do not, however, require the court to structure the payment of alimony and child support to accommodate the payor's compensation schedule.

The record reveals that the court took into consideration all of the statutory criteria set forth in §§ 46b-82 and 46b-84. The record also reveals that the court did not order the defendant to pay alimony and child support out of an asset that was awarded to him as part of the court's equitable distribution of the marital property and did not simultaneously treat the defendant's share of funds in the U.S. Trust account as both an asset and as income. We therefore conclude that the court did not abuse its discretion because it properly applied the law and reasonably rendered its orders on the basis of the facts.

Having addressed the defendant's first claim, we now turn to his second claim. The defendant next claims that the court improperly distributed to the plaintiff a 60 percent share of the nonvested stock awards. Specifically, he maintains that the court "committed plain error in awarding [to the plaintiff] any share of the nonvested incentive stock awards earned by [the defendant] in a job that he did not even have until" after the parties had separated and the dissolution action was commenced.

The defendant cites our Supreme Court's decision in *Bornemann* v. *Bornemann*, 245 Conn. 508, 752 A.2d

978 (1998), and this court's decision in *Hopfer* v. *Hopfer*, 59 Conn. App. 452, 757 A.2d 673 (2000), in support of his argument that the court improperly awarded any share of the nonvested stock awards to the plaintiff because they were earned after the parties had separated and after the dissolution action was begun. At the outset, we note that it is unclear from the defendant's brief whether he contends that the court's distribution of the nonvested stock awards was improper because they were not marital property or whether he contends, instead, that the distribution was improper because the nonvested stock awards, although marital property, were the product of the defendant's efforts alone and, therefore, the plaintiff was not entitled to share the fruits of those efforts. We, nonetheless, conclude that the cases that the defendant has cited do not support either argument and, therefore, both claims fail.

We reiterate the applicable standard of review. "The standard of review in family matters is that this court will not disturb the trial court's orders unless it has abused its legal discretion or its findings have no reasonable basis in fact. . . . [T]he factual findings of a trial court on any issue are reversible only if they are clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *Rolla* v. *Rolla*, 48 Conn. App. 732, 737, 712 A.2d 440, cert. denied, 245 Conn. 921, 717 A.2d 237 (1998).

The defendant first seems to contend that the nonvested stock options were not properly distributable under § 46b-81 (a) because they were not marital assets. He cites to our Supreme Court's decision in *Bornemann* v. *Bornemann*, supra, 245 Conn. 508, and this court's

decision in *Hopfer* v. *Hopfer*, supra, 59 Conn. App. 452, in support of this argument. We conclude that neither case supports the defendant's argument.

In *Bornemann,* our Supreme Court held that non-vested stock options could properly be considered marital property. *Bornemann* v. *Bornemann,* supra, 245 Conn. 518–20. It explained that to be considered marital property, however, the court must first determine whether the stock options were earned during the marriage. Id., 521–22. That determination is made by considering the purpose of the award, that is, whether the options constitute compensation for past or future services. Id. On the one hand, stock options that are awarded prior to the date of dissolution and awarded solely for past services are considered to be earned during the marriage and are, therefore, considered marital property subject to equitable distribution under § 46b-81. See id., 522–29. On the other hand, stock options that are earned prior to the date of dissolution, but that constitute compensation for future services, are not considered to be earned during the marriage and, therefore, are not subject to distribution as marital property under § 46b-81. Id.; see also *Hopfer* v. *Hopfer,* supra, 59 Conn. App. 457–58.

In the present case, the defendant does not claim that the nonvested stock awards constituted compensation for future services and were, therefore, an after-acquired asset, one that was not earned during the marriage. He claims, instead, that the nonvested stock awards are nonmarital property simply because they were earned *after the date of separation. Bornemann* does not support that conclusion. In *Bornemann,* our Supreme Court explained that although "the date of separation may be of significance in determining what is equitable at the time of distribution," "§ 46b-81 indicates that it is the date of dissolution, rather than the date of separation, on which the [parties'] marital assets are

to be determined." *Bornemann* v. *Bornemann*, supra, 245 Conn. 536–37. Accordingly, we conclude that the date of the parties' separation was relevant only to how the marital assets were to be apportioned between the parties; it was not relevant to determining whether or not the nonvested stock awards were marital property.

Like the trial court in *Bornemann*, the court in the present case did not expressly state that it determined the nonvested stock awards to be marital property subject to distribution under § 46b-81.[7] "Implicit in its decision to distribute the [nonvested stock awards] without identifying any portion of them as after-acquired property, however, is its conclusion that the [nonvested stock awards] were marital property in their entirety. Because we have already concluded that the [awards] would constitute marital property if they were earned during the marriage, we review whether the trial court properly could have concluded that the [nonvested stock awards] were earned entirely during the marriage." Id., 526–27. In doing so, our review is guided by the well established principle that "[t]he resolution of conflicting factual claims falls within the province of the trial court . . . [and] [t]he trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole." (Internal quotation marks omitted.) Id., 527.

We conclude that, in the present case, the court properly could have determined that the nonvested stock

---

[7] We note that the defendant did not request an articulation as to whether the court had considered the nonvested stock awards marital property subject to distribution under General Statutes § 46b-81. "It is the burden of the appellant, utilizing the rules of practice, to present us with a proper record on the basis of which we can, in fairness to all the parties, determine the appeal." 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 60i, p. 386. We, nonetheless, review the defendant's claim because we conclude that the memorandum of decision, in conjunction with the trial transcripts and exhibits, provides us with an adequate record for review.

awards were earned during the marriage. There was evidence before the court to indicate that the nonvested stock awards were awarded for the defendant's past services only. Documentation from the defendant's employer, Credit Suisse Bank, expressly stated that both the vested and nonvested stock awards were to be considered a part of the defendant's total compensation package for the year 1999. Our review of the record reveals no evidence to the contrary.

On the basis of this evidence, we cannot conclude that the court abused its discretion in determining that the nonvested stock awards constituted marital property and were, therefore, properly distributable under § 46b-81 (a).

The defendant also cites *Hopfer* v. *Hopfer*, supra, 59 Conn. App. 452, claiming that our holding in that case supports the proposition that it was improper for the court in the present case to distribute any of the non-vested incentive stock to the plaintiff because it was earned by the defendant after the parties had separated and after the plaintiff commenced the dissolution action. We disagree that our holding in *Hopfer* supports that proposition. In *Hopfer*, the stock options were earned by the defendant in a job that he did not begin until more than one year after the plaintiff had filed the dissolution action. Id., 455. We held that the trial court did not abuse its discretion in determining that the nonvested stock options at issue were not marital property. Id., 456–58. Our holding in *Hopfer*, however, turned on the fact that the trial court had found that the stock options were rendered entirely as incentive for *future services*; id., 458; and therefore were not marital property, and not, as the defendant contends, on the fact that the options were earned after the plaintiff had filed her complaint seeking a dissolution.

The defendant also seems to contend that even if the nonvested stock awards constituted marital property

subject to distribution under § 46b-81, the court, none-theless, abused its discretion in awarding any share of those awards to the plaintiff. Specifically, he argues that, in awarding a 60 percent share of the nonvested stock awards to the plaintiff, despite the fact that the parties were separated before the nonvested stock awards were earned, the court failed to consider the respective contribution of the parties to the acquisition of that asset.

Section 46b-81 (c) sets out the factors that the trial court must take into account in assigning property to either of the parties to the dissolution. It provides in relevant part that the court "shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acqui-sition of capital assets and income. . . ." General Stat-utes § 46b-81 (c).

In addition to those factors, that subsection also pro-vides that "[t]he court shall also consider the contribu-tion of each of the parties in the acquisition, preservation or appreciation in value of their respective estates." General Statutes § 46b-81 (c). Thus, "[w]hile the court has discretion to allow or to disallow one spouse to share in the assets acquired by the other after separation . . . a court is not prohibited from award-ing one spouse a share in the other's assets no matter when acquired, even if the acquisition occurs after a separation. This is so for two reasons. First, the non-monetary contributions of one spouse, such as the pri-mary care of children and the upkeep of the family home, may have enabled the other spouse to acquire or to retain assets . . . and such contribution can con-tinue after the parties' separation. Second, assets are valued as of the date of dissolution, rather than as of

the date of an earlier separation." (Citations omitted.) *Roach* v. *Roach*, 20 Conn. App. 500, 508, 568 A.2d 1037 (1990).

"Whether the parties made a contribution in the acquisition and preservation of property is a question of fact. . . . Accordingly, this court can reverse the trial court's finding that the parties contributed equally to the accumulation and growth of the assets held by the parties as of the date of the dissolution only if it is found to be without any reasonable basis in the evidence." (Citations omitted.) *Rolla* v. *Rolla*, supra, 48 Conn. App. 738.

Our review of the record in the present case indicates that the court properly considered the criteria set forth in § 46b-81 (c). The court expressly stated in its memorandum of decision that it carefully considered all of applicable statutory criteria. Further, the court's memorandum indicates that it considered the age and health of the parties, their station, occupation and employability, the causes of the dissolution, the amount and sources of each party's income and the opportunity for each to acquire capital assets and income in the future. The court also seemed to give considerable weight to the fact that the plaintiff ceased working after the birth of the couple's youngest child and, although she possessed substantial earning capacity, has had limited earnings since that time due to the fact that she has chosen to dedicate the majority of her time to raising the couple's four children. The court noted on the record that "[t]here is a lot of credit to be given to raising four children, several of whom are teenagers." Further, the record shows that the plaintiff was the primary caregiver for the couple's four children in 1999, the time period in which the defendant earned the vested and nonvested stock awards.

On the basis of this evidence, we conclude that it was reasonable for the court to award a portion of the

nonvested stock awards to the plaintiff. Accordingly, we cannot conclude that the court abused its discretion in determining that the plaintiff was entitled to 60 percent of the nonvested stock awards "if, as and when received by the defendant."

Finally, the defendant claims that the court improperly calculated the percentages and dollar amounts of the assets to be awarded to each of the parties. He further claims that where the trial court has based its equitable distribution on erroneous calculations, this court must reverse the judgment and remand the case to the trial court for a new trial. We disagree.

Specifically, the defendant finds fault with the court's calculations regarding the division of the marital assets set forth in subsections (b) and (d) of paragraph five of the court's memorandum of decision. First, the defendant contends that paragraph 5 (b), which provides that "[t]he proceeds of the closing of the . . . house, presently being held in escrow, shall be divided . . . 43.5 percent ($209,398) to the plaintiff and 46.5 percent ($271,976) to the defendant"; contains a computation error because although "[t]he court awarded each party both a specific dollar amount and a precise percentage . . . the percentages add up to only 90 percent of the account." The defendant does not contend that the dollar amounts set forth by the court, which also represent each party's share of the funds in the account, do not represent the total amount of funds in that account. In other words, he does not contend that the total of the funds in the account was something other than $481,374, the total of $209,398 and $271,976, the plaintiff's and defendant's dollar shares, respectively.

Although we agree with the defendant that the percentages expressed by the court total only 90 percent, we conclude that the court's error amounts to a clerical error only. "A trial court possesses the power to modify

substantively its own judgment within four months succeeding the date on which it was rendered or passed. . . . A court may correct a clerical error at any time, even after the expiration of the four month period." (Internal quotation marks omitted.) *Cusano* v. *Burgundy Chevrolet, Inc.*, 55 Conn. App. 655, 659, 740 A.2d 447 (1999), cert. denied, 252 Conn. 942, 747 A.2d 519 (2000). In the present case, the court corrected its clerical error in a memorandum of decision dated August 3, 2001,[8] in which it stated that the escrow account should have been apportioned 56.5 percent to the defendant and not 46.5 percent as previously stated. Furthermore, the apportionment of the funds in the account was not rendered ambiguous by the erroneous percentages originally set forth by the court because the dollar amounts expressed by the court have at all times been correct. The change in the percentage of the escrow account apportioned to the defendant now reconciles with the dollar amount apportioned to him. Accordingly, we conclude that the court did not base its distribution of the funds in the escrow account on an improper calculation.

Second, the defendant claims that paragraph 5 (d) of the memorandum of decision apportions the balance in the U.S. Trust account to each of the parties by assigning each of them both a specific dollar amount and a precise percentage. He contends, however, that the dollar amounts and percentages cannot be reconciled with the court's own findings, set forth in a footnote to its memorandum of decision, that the money in that account was being used for support of the family during the period from the close of trial to the rendition of the judgment, March 30, 2000, through August 15, 2000. He again argues that when a trial court has made such an erroneous calculation the basis for its equitable

---

[8] That memorandum was issued after the defendant filed his brief in this appeal.

distribution award, a new trial is mandated because the error necessarily disrupts the "carefully crafted mosaic" created by the trial court. We disagree that the court made any such finding.

Paragraph 5 (d) states: "The $470,000 balance in the U.S. Trust account shall be divided 41.486 percent ($194,983) to the plaintiff and the balance of 58.514 percent to the defendant . . . ." In its memorandum of decision, the trial court footnoted paragraph 5, entitled "Division of Assets." In that paragraph, the court divided each of the marital assets of the parties by subsection. In the footnote, inserted after the title of the paragraph rather than after any particular subsection, the court explained that in dividing the marital assets as it did, it charged the defendant with $30,000 for his excessive spending and credited him $88,250, which he had thus far paid to the plaintiff as pendente lite alimony and child support at the rate of $17,650 per month. The court also noted that it credited the defendant with an additional $60,000 for ordinary and reasonable living expenses for himself and his children.

We conclude that the court did not, as contended by the defendant, make a finding in that footnote that those debits and credits were to be charged against the funds in the U.S. Trust account. On the basis of our reading of the memorandum of decision, we conclude that the explanation set forth in the footnote does not refer solely to paragraph 5 (d) containing the court's distribution of the funds in the U.S. Trust account but, rather, to the entire "Division of Assets" section setting forth the equitable distribution of all of the parties' assets. Accordingly, we conclude that the court considered those debits and credits in the context of apportioning the marital property as a whole. It did not find that they were to be charged against the $470,000 in funds contained in the U.S. Trust account.

In the present case, we conclude that the trial court did not abuse its discretion in awarding unallocated alimony and child support or in its equitable distribution of the parties' assets because, in so doing, it properly applied the relevant statutory and case law and reasonably rendered its orders on the basis of the facts.

The judgment is affirmed.

In this opinion the other judges concurred.