MEI CAMILLE PAGLIARO *v.* HUW RICHARD JONES
(AC 22067)

Schaller, Mihalakos and Bishop, Js.

Argued November 18, 2002—officially released March 25, 2003

*Kenneth A. Votre*, with whom was *Seth Klaskin*, for the appellant-appellee (defendant).

*Max F. Brunswick*, for the appellee-appellant (plaintiff).

*Opinion*

BISHOP, J. The defendant, Huw Richard Jones, appeals from the trial court's judgment awarding child support and attorney's fees to the plaintiff, Mei Camille Lee.[1] Specifically, he claims that the court improperly (1) awarded child support retroactively to May 15, 1995, when the minor child, Winston, was supported during that time by his presumed father, (2) failed to recognize the existence and effect of custody and support orders issued in Texas, (3) failed to deviate from the mandatory child support guidelines and (4) awarded attorney's fees.[2] The plaintiff cross appeals, claiming that the court improperly (1) refused to issue support orders for the payment of arrearages for three years prior to the filing of the first paternity action, pursuant to the accidental failure of suit statute, (2) refused to open the evidence prior to the issuance of its memorandum of decision, (3) ordered a downward deviation from the child support guidelines due to contributions allegedly made by the plaintiff's ex-spouse, but did not order an upward deviation on account of certain medical expenses incurred by her for the child and (4) found that the plaintiff had an earning capacity of $700 a week as of September,

---

[1] The plaintiff changed her last name from Pagliaro to Lee after a final decree of divorce issued in Texas on April 18, 2000, dissolving her marriage to Lance Pagliaro.

[2] In his reply brief, the defendant appears to assert, for the first time, that the court's orders for the lump sum payment of past due child support and attorney's fees were improper. That specific claim was not raised in the defendant's principal brief. We will not consider issues raised for the first time in a reply brief. *Segreto v. Bristol*, 71 Conn. App. 844, 847 n.4, 804 A.2d 928, cert. denied, 261 Conn. 941, 808 A.2d 1132 (2001).

1999. We affirm in part and reverse in part the judgment of the trial court.

This case has a procedural history matched in complexity by the parties' family dynamics. The court found the following facts. The parties met when both worked for the same law firm in Washington, D.C.; the plaintiff as a paralegal and the defendant as an attorney. During portions of May, June and July, 1992, the plaintiff, who was then married to Lance Pagliaro, maintained a sexual relationship with the defendant at his residence in the District of Columbia. Although the plaintiff remained nominally married to Pagliaro until 2000, Pagliaro left the Washington, D.C., area for Houston, Texas, in or about April, 1992.

When the plaintiff reported to the defendant in July, 1992, that she might be pregnant, he asked her to leave his apartment. The plaintiff then called Pagliaro, who offered that she could join him in Texas where they would raise the child as their own. The plaintiff then relocated to Texas where the child, Winston, was born on April 8, 1993. Pagliaro thereafter represented to the world that the child was his own. Additionally, he tried to persuade the defendant that the child was born of the marriage and, thus, was not the defendant's son.

While in Texas, the plaintiff attended law school and has since become a member of the Texas bar. She also gave birth to another child, Albert, whose father is Robert Kelso, a law school professor. At the time, the plaintiff was still married to Pagliaro.

In 1996, two relevant legal actions were commenced. In Connecticut, the plaintiff filed a paternity action against the defendant regarding the child Winston.[3] In

---

[3] The plaintiff, her children, Pagliaro and Kelso continue to reside in Texas. The defendant was residing in Connecticut as of the institution of the Connecticut proceedings, but has since moved to Arizona. No jurisdictional issues have been raised, and the parties agreed that Connecticut law should govern the proceedings.

Texas, a marital dissolution action was commenced in Texas between the plaintiff and Pagliaro. The Texas court stayed the dissolution action pending a resolution of the paternity action in Connecticut.

In Connecticut, the initial paternity action was dismissed on the 1998 dormancy list for failure to prosecute with reasonable diligence. The plaintiff subsequently filed a second paternity petition in Connecticut on May 15, 1998, and on November 22, 1999, the court, *McLachlan, J.*, adjudicated the defendant to be the child's father. The defendant did not appeal from the paternity judgment. The marriage between the plaintiff and Pagliaro was dissolved in Texas on April 18, 2000.

The plaintiff subsequently filed the present action, seeking an order for current and past due child support from the defendant. On June 7, 2001, the court, *Alander, J.*, ordered the defendant (1) to pay current child support of $226 weekly, (2) to pay, over time, an arrearage of child support in the amount of $75,933, including a lump sum payment of $20,000, (3) to maintain medical and dental coverage for the child if and when Pagliaro no longer is obligated to provide such coverage, (4) to be responsible for 56 percent of any unreimbursed medical expenses that exceed $100 each year and (5) to pay, over time, the plaintiff's reasonable attorney's fees in the amount of $20,000, including a lump sum payment of $10,000. This appeal followed. Additional facts will be set forth as necessary.

I

THE APPEAL

A

The first issues raised in the defendant's appeal are his claims that the court incorrectly calculated the child support arrearage. In support of his claim, the defendant

asserts that the court incorrectly ordered him to pay support for time periods when the child was not in the care of the plaintiff. Additionally, the defendant claims that the court did not give proper deference to various orders issued by the Texas court, including the orders associated with the marital dissolution action, and that the court failed to deviate from the mandatory child support guidelines.

At the child support hearing, the plaintiff sought child support retroactive to May 15, 1995, pursuant to General Statutes (Rev. to 1993) § 46b-160 (a).[4] The court found that during the three year retroactive period and thereafter, the following events took place in Texas.

From the child's birth until June 2, 1996, the child resided with the plaintiff and Pagliaro, with Pagliaro providing the sole financial support of the family. After a marital separation on June 2, 1996, until June 23, 1996, the child lived solely with Pagliaro. On June 24, 1996, Pagliaro was made sole temporary managing conservator[5] of the child by the Texas court, and the child returned to live with him. In July, 1996, Kelso was made sole managing conservator of the child, and the child lived with him until September, 1996, when Pagliaro was once again made sole managing conservator of the child. The child then resided with Pagliaro from September, 1996, until July 17, 1997. In April, 1997, the plaintiff, Pagliaro and Kelso were made temporary joint

---

[4] General Statutes (Rev. to 1993) § 46b-160 (a) provides in relevant part: "Proceedings to establish paternity of a child born or conceived out of lawful wedlock, including one born to, or conceived by, a married woman but begotten by a man other than her husband, shall be instituted by a verified petition of the mother or expectant mother . . . . Such petition may be brought at any time prior to the child's eighteenth birthday, provided liability for past support shall be limited to the three years next preceding the date of the filing of any such petition. . . ."

[5] Tex. Family Code Ann. § 153.371 (Vernon 2002) delineates the rights of a nonparent appointed as sole managing conservator.

managing conservators[6] of the child, with Pagliaro retaining physical custody of the child. On July 17, 1997, the plaintiff, Pagliaro and Kelso entered into an agreement in the Texas court under which each remained temporary joint managing conservator of the child and physical custody of the child was split equally, with each obligated to support the child financially while in his or her respective care. That arrangement continued in effect until November 22, 1999. Since then, the child has resided primarily with the plaintiff. The Texas final decree of divorce, entered on April 18, 2000, appointed the plaintiff, Pagliaro and Kelso as joint managing conservators and designated the child's primary residence with the plaintiff, with Pagliaro and Kelso being awarded specified visitation rights.

The court, *Alander, J.*, awarded past child support to the plaintiff for the years 1995 through the date of the hearing pursuant to § 46b-160. In its comprehensive and thoughtful memorandum of decision, the court first determined the presumptive amount of child support for the applicable time periods. The court then assessed the defendant's claim that he should be entitled to a downward deviation from the guidelines for those periods in which the child was not primarily in the plaintiff's care. The court found that for the time period May, 1995, through June 2, 1996, the plaintiff and child resided with her then husband, Pagliaro, who was the family's sole source of support. On the basis of that finding, the court did, in fact, make a downward adjustment in the support order.

The court declined, however, to order a downward deviation for the time period subsequent to June, 1996, when the plaintiff and Pagliaro were separated. In its discussion of that time period, the court noted its inabil-

---

[6] Tex. Family Code Ann. § 153.134 (Vernon 2002) provides for the designation of rights by the court among joint conservators.

ity from the paucity of evidence to make the findings necessary to warrant a deviation from the presumptive amount of child support. Additionally, the court noted its inability to determine the nature and legal effect of the various Texas orders. Specifically, the court was unable to discern whether any of the Texas orders operated to relieve the defendant of his presumptive obligation to support the child.

The defendant's arguments regarding past due child support are intertwined. He claims that the court failed to make factual findings regarding the plaintiff's living circumstances and need for support. Additionally, he asserts that the court failed to give proper deference to various Texas orders issued in the then pending marital dissolution action. Because those arguments are interrelated, we assess them together.

We review the defendant's claims regarding past due support orders by determining whether the court abused its discretion in its support orders. "As has been repeatedly stated by this court, judicial review of a trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the [trial] court correctly applied the law and could reasonably have concluded as it did. . . . Our function in reviewing such discretionary decisions is to determine whether the decision of the trial court was clearly erroneous in view of the evidence and pleadings in the whole record." (Citation omitted; internal quotation marks omitted.) *Unkelbach* v. *McNary*, 244 Conn. 350, 366, 710 A.2d 717 (1998).

In the case of support, however, the parameters of the court's discretion have been somewhat limited by the factors set forth in the child support guidelines. "Arrearage payments are addressed at length and in extensive detail in the guidelines, and as a result the trial court's discretion in setting arrearage payments is

closely circumscribed by the breadth of the law that it must apply." Id., 367.

General Statutes § 46b-215b (a) provides in relevant part: "The child support and arrearage guidelines . . . shall be considered in all determinations of child support amounts and payment on arrearages and past due support within the state. In all such determinations there shall be a rebuttable presumption that the amount of such awards which resulted from the application of such guidelines is the amount of support or payment on any arrearage or past due support to be ordered. . . ." The court assessed an arrearage using the child support guidelines set forth in § 46b-215a-1 et seq. of the Regulations of Connecticut State Agencies.

On the basis of the record provided to us, we find no fault in the court's refusal to deviate from the presumptive amounts of child support as set forth in the child support guidelines. In its memorandum of decision, the court stated: "The defendant contends that he should not be ordered to pay child support for those periods of time when Pagliaro had the child living with him. I am unable to determine whether a deviation from the presumptive child support amount is appropriate or equitable on such a basis without knowing the nature of the controlling court orders issued by the Texas court. At trial, the only Texas court orders, other than the final divorce decree, that were submitted as evidence were the court orders entitled 'Additional Temporary Orders,' which were entered by the Texas court on July 17, 1997. I was not provided with the Texas court orders that governed the period of time from the filing of the divorce in June, 1996, through July 17, 1997. I do not know the extent of the rights and obligations, including those related to custody and support, given the various parties that were appointed conservators of Winston at various times during the proceedings. See, e.g., Tex. Family Code Ann. §§ 153.134 (Vernon

1996) (which provides for the designation of rights by the court amongst joint conservators) and 153.371 (which specifies the rights of a nonparent appointed as sole managing conservator 'unless limited by court order'). I also do not know whether possessory conservators were appointed or the extent of their rights as specified by the court. See Tex. Family Code Ann. § 153.006 (Vernon 1996)."

The only documents from Texas entered into evidence were the April 18, 2000 final decree of divorce between the plaintiff and Pagliaro, and the July 17, 1997 temporary joint managing conservator agreement between the plaintiff, Pagliaro and Kelso. Although the defendant apprised the court of the existence of those orders in the Texas divorce proceedings, the record discloses that the legal meaning and practical import of those orders was not made known to the court. Pursuant to General Statutes § 52-164, "[t]he reports of the judicial decisions of other states and countries may be judicially noticed by the courts of this state as evidence of the common law of such states or countries and of the judicial construction of the statutes or other laws thereof." The provisions of that legislation, however, are not self-enforcing. That is, if a party wants the court to take judicial notice of foreign law, it is that party's responsibility not only to bring the statutory law to the attention of the court in the proper manner, but also to inform the court, through proper means, of the meaning or construction of the law by courts of that foreign jurisdiction. "Matter which it is claimed the court should judicially notice should be called to its attention by the party seeking to take advantage of the matter so that, if there is ground upon which it may be contradicted or explained, the adverse party will be afforded an opportunity to do so." (Internal quotation marks omitted.) *Wood* v. *Wood*, 165 Conn. 777, 780–81, 345 A.2d 5 (1974); see also *Heating Acceptance Corp.*

v. *Patterson*, 152 Conn. 467, 475, 208 A.2d 341 (1965). "Where another jurisdiction's law is applicable, it is the duty of counsel to supply the court with a clear understanding of that foreign law." (Internal quotation marks omitted.) *Ritcher* v. *Childers*, 2 Conn. App. 315, 318, 478 A.2d 613 (1984). Here, the defendant's claim fails because he simply provided the court with a court order and a bare reference to particular sections of the Texas family law without any further explication of their meaning or relevance to their application to the deviation criteria in our child support guidelines. Under those circumstances, we conclude that the discretionary application of the child support guidelines by the court was not clearly improper and was not inequitable on the basis of the evidence before the court.

B

The defendant's next claim is that the award of attorney's fees in this case was inappropriate. We disagree.

General Statutes (Rev. to 1993) § 46b-171 (a)[7] authorizes the award of attorney's fees in child support actions. In a paternity action, the court has broad discretion in determining the reasonable amount of attorney's fees to which a successful plaintiff is entitled. See *Donato* v. *Corrado*, 22 Conn. App. 583, 585–86, 578 A.2d 161 (1990). The defendant's reliance on General Statutes § 46b-62 and its reference to criteria set forth in General Statutes § 46b-82 is misplaced because the basis of the court's exercise of discretion is § 46b-171 and not § 46b-62. Unlike § 46b-62, § 46b-171 does not require a court to consider specific statutory factors in

---

[7] General Statutes (Rev. to 1993) § 46b-171 (a) provides in relevant part: "If the defendant is found to be the father of the child, the court or family support magistrate shall order him to stand charged with the support and maintenance of such child . . . [and] shall order him to pay the amount thereof to the complainant . . . together with a reasonable attorney's fee . . . ."

fashioning awards, but merely requires that exercise of the court's broad discretion be reasonable.

The court determined that the award of attorney's fees was appropriate, finding, on the basis of the financial affidavits, that the plaintiff lacked the financial wherewithal to pay her attorney's fees while the defendant possessed substantial income and assets. We find that conclusion to be reasonable and not an abuse of discretion.

## II

## THE CROSS APPEAL

In her cross appeal, the plaintiff asserts that the court improperly failed to award arrearage payments for the three years prior to the filing of the initial paternity action and to open the evidence prior to the issuance of its memorandum of decision. The plaintiff claims also that the court improperly ordered a deviation from the support guidelines due to the earnings of Pagliaro while she and the child resided with him and refused to award an upward deviation for the child's claimed medical expenses that she incurred. Finally, the plaintiff claims that the court incorrectly determined her earning capacity to be $700 a week starting in September, 1999. We review each claim in turn.

## A

The plaintiff's first verified paternity petition was filed in Connecticut on July 8, 1996. That petition was dismissed in early 1998 for failure to prosecute with reasonable diligence. The plaintiff refiled her paternity petition on May 15, 1998.

The accidental failure of suit statute, General Statutes § 52-592 (a), provides in relevant part: "If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because of

. . . unavoidable accident or the default or neglect of the officer to whom it was committed . . . the plaintiff . . . may commence a new action . . . for the same cause at any time within one year after the determination of the original action . . . ."

General Statutes § 46b-160 (a) provides in relevant part: "Such petition [for child support] may be brought at any time prior to the child's eighteenth birthday, provided liability for past support shall be limited to the three years next preceding the date of the filing of any such petition. . . ."

The plaintiff argues that pursuant to the accidental failure of suit statute, "the three years next preceding the date of the filing of any such petition"; General Statutes § 46b-160 (a); should be the three year period preceding the date of the filing of the first petition; i.e., July 8, 1996. The court ruled that the accidental failure of suit statute did not extend the three year limitation imposed by § 46b-160, and, therefore, the plaintiff's claim for retroactivity was limited to May 15, 1995, three years prior to the filing of the present petition. We agree with the court.

"Statutory interpretation is a matter of law over which this court's review is plenary. . . . In construing statutes, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *Quigley-Dodd* v. *General Accident Ins. Co. of America,* 256 Conn. 225, 232, 772 A.2d 577 (2001); see also *State* v. *Courchesne,* 262 Conn. 537, 577, 816 A.2d 562 (2003) (en banc).

The accidental failure of suit statute is remedial in nature and was enacted to avoid the hardships arising from an unbending enforcement of statutes of limitation. See *Gallo* v. *G. Fox & Co.,* 148 Conn. 327, 329, 170 A.2d 724 (1961). The express language of § 52-592 (a) allows a plaintiff to "commence a new action" if a prior

action has been dismissed, as long as she does so within one year of the dismissal of the initial action. The statute does not allow a plaintiff to revive an old action; it allows a plaintiff only to commence a new action to avoid the statute of limitations.

In the present case, the plaintiff's claim never was in danger of being defeated by the statute of limitations because she could have brought the action at any time until the child's eighteenth birthday. The three year retroactivity provision of § 46b-160 is not a statute of limitations, but is a statutory allowance for past child support. As such, § 52-592 does not apply, and the court properly concluded that the three year retroactivity provision of § 46b-160 relates to the time of the filing of the present petition, May 15, 1998.

### B

The plaintiff next claims that the court improperly refused to open the evidence prior to the issuance of its memorandum of decision. We disagree.

At the time of the evidentiary hearing to determine the amount of support, present and past due, the defendant had not provided his W-2 form for the year 2000. He had submitted only a form 1040 showing his and his wife's combined income. Thereafter, two weeks after the close of evidence, the defendant supplied his W-2 form to the plaintiff, who thereupon filed a motion to open the evidence. The court denied the motion and issued its memorandum of decision. The plaintiff claims that because the W-2 demonstrates that the defendant's gross earnings were $147,606.70 and not $115,875.24, as he had testified at the hearing, he underreported his income by approximately 22 percent.

"Whether or not a trial court will permit further evidence to be offered after the close of testimony in the case is a matter resting within its decision. . . . In the

ordinary situation where a trial court feels that, by inadvertence or mistake, there has been a failure to introduce available evidence upon a material issue in the case of such a nature that in its absence there is serious danger of a miscarriage of justice, it may properly permit that evidence to be introduced at any time before the case has been decided." (Internal quotation marks omitted.) *Gilliard* v. *Van-Court Property Management Services Ltd.*, 63 Conn. App. 637, 641, 777 A.2d 745 (2001).

The court acted within its discretion in denying the plaintiff's motion to open the evidence. The record does not demonstrate that the information regarding the defendant's gross earnings for the year 2000 was made unavailable to the plaintiff by the defendant prior to trial or by its conclusion, nor does the record reveal whether the plaintiff had sought that information through pretrial discovery. Under those circumstances, we find no abuse of discretion by the court in refusing to open the evidence.

C

The plaintiff next claims that the court improperly ordered a downward deviation in the defendant's support obligation for contributions allegedly made by the plaintiff's former husband while she and the child resided with him. We disagree.

The presumptive child support amounts prescribed by the guidelines may be rebutted by a specific finding that such amounts would be inequitable or inappropriate in a particular case. Section 46b-215a-3 (b) (1) of the Regulations of Connecticut State Agencies contains a deviation criteria for other financial resources available to a parent. Specifically, it provides a deviation for "the regularly recurring contributions or gifts of a spouse or domestic partner, but only if it is found that the parent has reduced his or her income or has experi-

enced an extraordinary reduction of his or her living expenses as a direct result of such contributions or gifts." Regs., Conn. State Agencies § 46b-215a-3 (b) (1) (D).

Specifically, the plaintiff challenges the determination by the court to order a downward deviation in support from May 15, 1995, through June 2, 1996, while the plaintiff and the child resided with Pagliaro, who was then the family's sole source of support. The court made a specific determination that it would be inequitable and inappropriate to require the defendant to pay the presumptive past due child support for that time period when the plaintiff and the child were completely supported by the plaintiff's then husband. Pursuant to General Statutes § 46b-215b, the presumptive support amount may be rebutted by a specific finding on the record that the application of the guidelines would be inappropriate or inequitable. On the basis of our review of the record, the court's determination was not clearly improper. For the relevant time period, the court found that the plaintiff had no income of her own, and that Pagliaro had paid all the expenses of her and her child. The court found that the plaintiff had experienced, during that time period, an extraordinary reduction in her living expenses as a result of those financial contributions, and, as such, allowed the defendant a downward deviation for that time period pursuant to § 46b-215a-3 (b) (1) (D) of the regulations.

Also challenged by the plaintiff was the finding by the court that Pagliaro paid the monthly mortgage of $1300 on the marital home where the plaintiff resided from June 2, 1996, through February, 2000. The court found that the plaintiff had experienced an extraordinary reduction in her living expenses as a direct result of that financial contribution.

"The standard of review in family matters is that this court will not disturb the trial court's orders unless it

has abused its legal discretion or its findings have no reasonable basis in fact. . . . [T]he factual findings of a trial court on any issue are reversible only if they are clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Kiniry* v. *Kiniry*, 71 Conn. App. 614, 623, 803 A.2d 352 (2002).

Our review of the record reveals no evidence that would make those findings clearly improper. The court properly made deviations from the child support guidelines in response to findings that the contributions by Pagliaro caused an extraordinary reduction in the plaintiff's living expenses and that, under those circumstances, it would be inequitable and inappropriate not to order a downward deviation. In that determination, the court did not act incorrectly.

D

The plaintiff next claims that the court acted improperly in not ordering an upward deviation for medical expenses she had incurred on behalf of the child. Because she neither briefed nor argued her claim, we treat it as abandoned and decline to afford it review. "[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . We will not review claims absent law and analysis." (Internal quotation marks omitted.) *Legnos* v. *Legnos*, 70 Conn. App. 349, 355, 797 A.2d 1184, cert. denied, 261 Conn. 911, 806 A.2d 48 (2002).

E

The plaintiff's final claim on her cross appeal is that the court's order for past due support for 1999 and 2000 was based, in part, on its improper determination that she had an earning capacity of $700 per week from September, 1999, when the evidence established that it should have been from September, 2000. We agree.

In its memorandum of decision, the court found that for the calendar year 1999, the plaintiff had a gross income of $10,444 from employment as a web site consultant and that commencing in October, 1999, she had the capacity to earn a weekly net income of $705 as an attorney. A review of the record reveals, however, that the plaintiff testified that she opened her law office and started practicing in October, 2000, approximately one year later. The parties stipulated that from that point, the plaintiff's income was approximately $700 per week. A fair reading of the transcript demonstrates that the court based its findings on the plaintiff's earnings as a lawyer, the start of which was October, 2000, and not October, 1999. Despite that evidence, the court found that the plaintiff's earning capacity was $700 per week from September, 1999.

"A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . Simply put, we give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Internal quotation marks omitted.) *State* v. *Santiago*, 73 Conn. App. 205, 234, 807 A.2d 1048 (2002), cert. granted on other grounds, 262 Conn. 939, 815 A.2d 673 (2003).

Our review of the record reveals no evidence on which the court could have based its finding that the plaintiff had an earning capacity of $700 a week commencing in September, 1999. The evidence regarding the plaintiff's earnings in 1999 and 2000 consisted of her testimony and tax filings for both years. None of that evidence warrants the determination that the plaintiff had an earning capacity of $700 per week starting in September, 1999. As such, the court's finding is incorrect. Because the court's orders for past due support for 1999 and 2000 were based, in part, on that faulty predicate, they must be reversed.

On the defendant's appeal, the judgment is affirmed. On the plaintiff's cross appeal, the judgment is reversed only as to the determination of past due support for 1999 and 2000 and the case is remanded for a redetermination of the past due support for 1999 and 2000 on the basis of the relevant evidence pertaining to those years.

In this opinion the other judges concurred.