DEIDRE ANN KINIRY *v.* ANTHONY J. KINIRY
(AC 21175)

Dranginis, Bishop and Peters, Js.

Argued March 27—officially released September 16, 2003

*Wesley W. Horton*, with whom were *Kenneth J. Bartschi* and, on the brief, *Gary I. Cohen*, for the appellant (defendant).

*Mary Ellen Wynn*, for the appellee (plaintiff).

*Opinion*

DRANGINIS, J. The defendant, Anthony J. Kiniry, filed a motion for reconsideration or reconsideration en banc of *Kiniry* v. *Kiniry*, 71 Conn. App. 614, 803 A.2d 352 (2002), which affirmed the judgment of the trial court in this marital dissolution action.[1] We granted the defendant's motion as to reconsideration and sua sponte ordered the parties to appear for oral argument.[2] In his motion for reconsideration, the defendant claims that the record did not substantiate this court's conclusion that the trial "court specifically noted . . . that the defendant had significant borrowing power . . . ." Id., 620. We agree with the defendant that the trial court made no specific finding that he had significant borrowing power. On further review and after hearing the parties at oral argument, however, we affirm the judgment of this court, as we conclude that there was ample evidence from which the trial court could infer, and imply in its memorandum of decision, that the defendant had significant borrowing power. Borrowing money was, in fact, the manner in which the defendant

[1] Two members of the panel that first decided this appeal, Associate Judge E. Eugene Spear and Hon. John J. Daly, judge trial referee, died since that panel rendered its decision. The case, therefore, was assigned to the present panel.

[2] The parties were not asked to submit supplemental briefs.

had managed his family finances prior to the dissolution of the parties' marriage.

Our conclusion that this court could have inferred from the implications in the trial court's memorandum of decision that the defendant has significant borrowing power is substantiated by the recitation of the facts in his brief to this court. The defendant as much as admitted that he had supported his family from bonus to bonus by borrowing money and that he had borrowed significant sums of money to sustain the type of lifestyle to which he and his family aspired.[3] The defendant also acknowledged that he had earned significant sums of money.[4] In the section of his brief dedicated to a statement of the facts, the defendant cited the trial court's memorandum of decision in support of his recitation of the facts in compliance with Practice Book § 67-4 (c). Notably, on appeal, the defendant did not claim that the trial court's findings of fact were clearly erroneous or that there was insufficient evidence to support its findings of fact. To the contrary, the claims raised by the defendant on appeal are legal claims to which the abuse of discretion standard applies. See *Kiniry* v. *Kiniry*, supra, 71 Conn. App. 615, 619.

In his motion for reconsideration, the defendant has focused on one sentence in this court's opinion, which

[3] In his brief to this court, the defendant stated: "Neither party brought more than nominal financial assets to the marriage. Their affluent standard of living was financed by borrowings and credit from one bonus to the next. They regularly spent more during the year than they earned and then reduced their debt with the defendant's bonus. [The parties] lived in New Jersey during the early part of their marriage and moved to New Canaan, Connecticut, in 1987. Their first New Canaan home was purchased for $1,750,000 with substantial mortgage financing."

[4] The defendant set forth the following additional facts in his brief: "[The] [d]efendant's earnings, a combination of base salary and bonus, have been substantial, although not consistent. [The] [d]efendant earned $1 million in 1992 and also in 1993, but only $445,000 in 1994. Between 1995 and 2000, he earned variously from $700,000 to as much as $1.5 million."

he has taken wholly out of context. The statement on which the defendant relies was not part of this court's recitation of the trial court's findings of fact. This court set forth the following relevant facts as found by the trial court: "From the very beginning of the marriage, the parties adopted an affluent style of living, regularly spending more than the substantial amount of money that they earned. They financed this lifestyle by short-term borrowing and running up credit card debt, which they later paid down after receiving the defendant's year-end bonus at the start of the following year." Id., 616.

This court then turned to the first of the defendant's appellate claims, that is, "that the court improperly ordered him to pay alimony and child support out of an asset that it had awarded to him as part of its equitable distribution of the marital property." Id., 618. This court addressed the defendant's claim in two parts, the first of which is relevant to the defendant's motion for reconsideration. The court stated that "[f]irst, [the defendant] claims that the [trial] court improperly *ordered* him to pay alimony and child support from his equitable share of the funds contained in the U.S. Trust savings account." (Emphasis in original.) Id., 618. This court, however, agreed with the plaintiff's response to the defendant's claim, stating: "The plaintiff points out . . . that the [trial] court's memorandum of decision does not require the defendant to pay the $40,000 unallocated order out of his share of the U.S. Trust account. . . . [The trial court's] decision does not compel any particular solution for his cash flow problem." (Internal quotation marks omitted.) Id., 618–19.

This court then addressed additional facts that were relevant to its analysis of the defendant's claim that the trial court had ordered him to pay alimony and child support from his equitable share of the funds in the U.S. Trust account. This court stated that the defen-

dant's 2000 base salary, paid monthly, was not sufficient to meet the trial court's monthly order of unallocated alimony and child support until he received his year-end bonus in February, 2001. The defendant claimed, in essence, that the trial court's order required him to use his share of the U.S. Trust funds to pay the order.

This court concluded, after reviewing the trial court's memorandum of decision, that it contained no such order. This court noted that the trial court was aware of the amount and the manner in which the defendant was compensated.[5] This court continued its analysis to demonstrate that although the trial court had not ordered the defendant to use his U.S. Trust funds to

---

[5] "[T]he record reveals that the [trial] court was cognizant of how and when the defendant was to receive his earnings." *Kiniry* v. *Kiniry*, supra, 71 Conn. App. 620.

We note that the transcript of the October 2, 2000 hearing, which was before this court in *Kiniry* v. *Kiniry*, 71 Conn. App. 614, reveals the following colloquy between the trial court and the defendant's counsel:

"The Court: All right. Next question. There are other possibilities for ways that he could make those payments, are there not?

"[The Defendant's Counsel]: There is no way that he can make it out of any kind of income, Your Honor. He must liquidate assets.

"The Court: No, that's not true. Let me ask you this: Could the defendant borrow money to make these payments?

"[The Defendant's Counsel]: There has been no record, Your Honor, to establish the defendant's borrowing power, particularly in light of the court's memorandum that strips him of almost all of the assets and leaves him with liabilities in the sum of about a quarter of a million dollars.

"The Court: He certainly could make application to borrow money to do that, could he not?

"[The Defendant's Counsel]: I suppose he could, Your Honor. Although just like [*Lake* v. *Lake*, 49 Conn. App. 89, 712 A.2d 989, cert. denied, 246 Conn. 902, 719 A.2d 1166 (1998), which] made an assumption about the availability of life insurance, the Appellate Court has held that in the absence of a record establishing the insurability of the proposed insured and the premiums for the policy, the court did not have the authority, if you will, to make such an order.

"The Court: *Well, the court does because the court, wouldn't you think, based on his earnings record, the court has information based on his earnings record and his financial affidavit. That would lead the court to the conclusion that he has some borrowing power.*" (Emphasis added.)

pay the unallocated monthly order, that result was not de facto because the court understood that the defendant knew how to support, and in fact had supported, his family by borrowing money. The trial court told the defendant what to do, not how to do it. The defendant had choices of which he surely must be aware, given his history of employment on Wall Street and with international banks.

Strictly speaking, with respect to the defendant's motion for reconsideration, we agree that the trial court in its memorandum of decision made no finding that the defendant had significant borrowing power. There were enough facts before the trial court, however, for it to draw that inference. See footnote 5.

"Ordinarily it is not the function of . . . the Appellate Court to make factual findings, but rather to decide whether the decision of the trial court was clearly erroneous in light of the evidence and pleadings in the whole record. . . . Conclusions of fact may be drawn on appeal only where the subordinate facts found [by the trial court] make such a conclusion inevitable as a matter of law . . . or where the undisputed facts or uncontroverted evidence and testimony in the record make the factual conclusion so obvious as to be inherent in the trial court's decision." (Citations omitted; internal quotation marks omitted.) *State* v. *Reagan*, 209 Conn. 1, 8–9, 546 A.2d 839 (1988).

In its memorandum of decision, the trial court also set forth facts in such a way that it implied that the defendant had significant borrowing power. A person with only a general knowledge of what it takes to borrow money certainly could infer from the trial court's memorandum of decision that the defendant had significant borrowing power. Perhaps this court should have chosen other words, but the distinction between "specifically noted" and "implied," in this case, is a distinc-

tion without a difference. On the basis of the defendant's motion for reconsideration and the oral arguments of the parties, we conclude that there is no reason to modify this court's decision in *Kiniry* v. *Kiniry*, 71 Conn. App. 614.

The judgment is affirmed.

In this opinion the other judges concurred.